Jobeth COOK, Appellant,

v.

Glenn E. COOK, Jr., Appellee.

No. 04–82–00260–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 22, 1984.
Rehearing Denied Oct. 22, 1984.

Werner Gohmert, Alice, for appellant.
Homer E. Dean, Jr., Alice, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

In this divorce case appellant, Jobeth Cook (wife), contends that the trial court abused its discretion in dividing the marital estate between her and appellee, Glenn E. Cook, Jr., (husband). No question is raised in this Court concerning that portion of the trial court's decree dissolving the marriage between the parties.

An examination of the judgment and the findings of fact and conclusions of law establish that the assets listed below were considered to be community property and that each asset had the value listed below. The community estate was divided as follows:

**To wife**

Assets
| | | |
|---|---|---:|
| 1. | Schlumberger profit sharing account | $ 12,289.48 |
| 2. | Furnishings at Rose Drive house | 5,238.75 |
| 3. | 1977 pickup | 6,862.00 |
| 4. | Cash and checking account | 2,800.00 |
| 5. | Jewelry | 2,500.00 |
| 6. | Rose Drive house | 85,000.00 |
| 7. | Theft recovery | 700.00 |
| | TOTAL ASSETS | $115,390.23 |

Debts
| | | | |
|---|---|---:|---:|
| 1. | Mortgage on Rose Drive house | $13,900.00 | |
| 2. | Medical bills | 1,000.00 | |
| 3. | Note to Glenn secured by lien on Rose Drive house | 10,000.00 | |
| | TOTAL DEBTS | | $ 24,900.00 |
| | | NET TO WIFE | $ 90,490.23 |

(approximately 60% of total net estate)

**To husband**

Assets
| | | |
|---|---|---:|
| 1. | Retirement plan | $ 28,196.13 |
| 2. | Thrift plan | 16,156.00 |
| 3. | 1972 Oldsmobile | (no evidence of value) |
| 4. | Furnishings in Glenn's possession | (no evidence of value) |
| 5. | Tenneco 25-year medallion | (no evidence of value) |
| 6. | Cash | 2,000.00 |

To husband
  Assets
7. Checking account ................................................... 2,031.16
8. Note from Jobeth .................................................. $ 10,000.00
   TOTAL ASSETS .................................................... $ 58,383.29

  Debts
1. Internal Revenue Service ........................................... 1,651.46

NET TO HUSBAND   $ 56,731.83
(approximately 40% of total net estate)

If the trial court's characterization of each asset as community property is correct, and we accept the value of each asset as found by the trial court, the trial court's finding of fact that it had awarded approximately 60% of the net value of the community estate to the wife and 40% to the husband cannot be challenged, and the wife's complaint that the trial court erred in awarding a greater share of the estate to the husband than to her appears to be unfounded. However, the wife complains that (1) the trial court erred in characterizing the Rose Drive residence and the pickup truck as community; (2) the finding that the increase in the Schlumberger profit sharing account during the marriage amounted to $12,289.48 finds no support in the evidence; (3) the finding that the truck had a value, at the time of the divorce, of $6,862.00 finds no support in the evidence and, in fact, the undisputed evidence and agreement of the parties establishes that its value at that time was only $2,800.00; and (4) the court's finding that the value of the furniture awarded to her was $5,238.75 finds no support in the evidence, since the evidence conclusively establishes a value of $3,500.00.

The undisputed evidence establishes:

1. At the time the parties were married on August 15, 1974, the wife owned a residence on Roosevelt Street and a Chrysler automobile. Both of these items were awarded to her as her separate property under the terms of a decree dissolving her prior marriage.

2. When, after the marriage, the parties purchased the Rosewood Drive residence, part of the purchase price was paid by the conveyance of the wife's separate Roosevelt Street home to the seller. This represented a payment of 43% of the total purchase price from the separate estate of the wife.

3. When the pickup truck was purchased in 1977, the wife traded in her Chrysler, thus contributing 28% of the purchase price from her separate estate.

4. By virtue of the decree entered in her previous divorce case, the wife owned a one-half interest in the Schlumberger profit sharing plan in her separate right.

5. Both husband and wife testified that the value of the truck at the time of the divorce was $2,800.00, and that the value of the household furniture awarded to the wife was $3,500.00. There is no evidence to support the trial court's findings of any higher value of the truck and furniture.

Where property is purchased partly with community funds and partly with separate funds, the property is community property to the extent and in the proportion that the purchase price is paid by the community, while the spouse providing the separate funds will have a separate interest in the property to the amount of investment of separate funds. The result has been described as a sort of tenancy in common between the community and separate estates. *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881, 883–84 (1937). Under the facts of the case before us, the wife's separate estate owned a 43% interest in the Rose Drive residence while the community owned a 57% interest, and the wife's separate estate owned a 28% interest in the truck while the community owned a 72% interest. *See Baize v. Baize*, 460 S.W.2d 255, 256 (Tex.Civ.App.—Eastland 1970, no writ); *Carter v. Grabeel*, 341 S.W.2d 458, 460 (Tex.Civ.App.—Amarillo 1960, no writ). This rule has been followed in Texas for

more than 130 years. *Love v. Robertson,* 7 Tex. 6, 11–12 (1851).

As already pointed out, the undisputed evidence was to the effect that the value of the truck was $2,800.00, and the value of the furniture was $3,500.00. In its sixth finding of fact, the trial court found that the 1977 truck was "purchased at an original cost of $6,862.00," and that the truck "had approximately that value at the time of the divorce." This finding is somewhat puzzling, even if we disregard the undisputed testimony as to a value of $2,448.00, since the purchase price of the truck was $2,700.00. The fifth finding of fact recites the original cost of the items of furniture awarded to the wife, and it is apparent that the trial court's conclusion concerning the value of such furniture corresponds with such original cost, rather than the value at the time of the divorce.

▇ The wife's one-half interest in the profit sharing plan is her separate property, and there is no evidence showing the value of such interest. The $12,289.48 used by the trial court in assigning a value to this asset apparently represents the trial court's opinion as to the increase in value during the marriage. There is no evidence supporting this finding. There appears in the transcript a letter signed by G.A. Modjeski, who is described by language appearing under his signature as "Supervisor Benefits & Compensation" for Schlumberger, to the effect that the wife's interest in the plan on December 31, 1973, was $9,542.22, and her interest on December 31, 1981, was $21,831.70. It is apparent that the trial court's determination as to the increase in value during the marriage was reached by subtracting the December, 1973 value from the December, 1981 value.

The letter is addressed to the husband's attorney and recites that a copy was sent to the wife's counsel. It bears no file mark, but on the upper right-hand corner there is stamped the date, April 6, 1982, and above this stamp there appears, in the handwriting of some person not identified, "Rcd. by Court." There is nothing in the statement of facts or the transcript which indicates that the document was properly authenticated and introduced in evidence. In any event, it can be accorded no probative force since it is clearly hearsay.

The record indicates that reception of evidence began and ended on March 31, 1982, two days prior to the date the letter was written. Husband argues that the letter "carried out the agreement of both parties to make such evidence from both sides as to pension plans available to the court." An examination of the record, with special attention paid to the portions of the statement of facts which husband asserts reflects such agreement, discloses no evidence of any agreement of that nature.

We must, then, examine the division of the community property by properly characterizing the community's interest in the residence as only 57% and the community interest in the truck as being only 72%; assigning values of $3,500.00 to the furniture and $2,448.00 to the truck, rather than the values of $5,238.75 and $6,862.00 which the trial court assigned to these two items; and deducting from the net value of the community assets awarded to the wife the amount of $12,289.48 which the trial court used in connection with the profit sharing plan. When this is done, the result is that the wife received only 38% of the total net value of the community assets, rather than approximately 60% as the court found, while the husband received 62%, rather than the 39% reflected by the court's finding of fact.[1]

---

1. Recognition of the wife's separate interest in the home and truck, and evaluation of the assets awarded to her as reflected by the evidence, results in the following conclusions concerning the value of the community assets awarded to her:

| | | |
|---|---|---|
| 1. | Schlumberger profit sharing account | (no evidence of value) |
| 2. | Furnishings at Rose Drive house | $ 3,500.00 |
| 3. | 1977 pickup (72% community interest) | 2,448.00 |
| 4. | Cash and checking account | 2,800.00 |
| 5. | Jewelry | 2,500.00 |
| 6. | Rose Drive house (57% community interest) | 48,450.00 |
| 7. | Theft recovery | 700.00 |
| | TOTAL ASSETS | $60,398.00 |
| | Less Debts | 24,900.00 |
| | NET TO WIFE | $35,498.00 |
| | (38% of total net estate) | |

The trial court's error in characterizing property does not require a reversal unless we find that the court would have made a different division if the property had been properly characterized. Stated differently, we may not reverse unless we find that the wife was prejudiced by the failure of the court to recognize her separate interest in the residence and truck and determine that the division made was, because of the legal errors on which it was based, so unfair as to constitute an abuse of discretion. *McLemore v. McLemore*, 641 S.W.2d 395, 398 (Tex.App.—Tyler 1982, no writ). As pointed out in *Smith v. Smith*, 620 S.W.2d 619, 625 (Tex.Civ.App.—Dallas 1981, no writ), this conclusion is compelled since TEX.R.CIV.P. 434 prevents the presumption of harm from the mere fact that the trial court committed an error of law.

The same is true of errors in the valuation of property. Such errors do not require reversal unless the complaining party shows that, because of the errors in valuation, the division made by the trial court is manifestly unjust. *Moore v. Jones*, 640 S.W.2d 391, 393 (Tex.App.—San Antonio 1982, no writ); *Thomas v. Thomas*, 603 S.W.2d 356, 358 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd).

The wife's burden is not satisfied by merely showing that the errors led to an unequal division of the marital estate. Again, she must show that the resulting unequal division is manifestly unjust. *Pruske v. Pruske*, 601 S.W.2d 746, 750 (Tex.Civ.App.—Austin 1980, writ dism'd).

When determining what would constitute a fair division of the marital estate, the court may consider such factors as disparity of income or of earning capacity of the parties, their relative physical conditions and financial conditions, the size of their separate estates, business opportunities available to each spouse, and the nature of the property involved. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981). An unequal division may, in the light of these and other factors, be characterized as fair.

The marriage, which was childless, had lasted about seven years. The wife suffered from a neck ailment which had its inception prior to the marriage but which still persists and requires treatment. At the time of the divorce she had worked "off and on" as a cashier in a restaurant for eighteen years. The husband had worked for Tennessee Gas Corporation for thirty years, and there is no evidence that he suffers from any physical disability. The most recent tax return filed by the parties shows that the wife earned $8,000.00 while the husband earned $27,000.00. The wife's separate estate as to which there is any evidence of value consists of her separate interest in the home and truck, totalling $37,502.00. The husband owns separate property, including his interest in a thrift plan and a retirement plan, but there is no evidence concerning the value of such separate estate. The trial court did find that the husband's interest in the retirement plan had increased by $28,196.13 during the marriage, and that during such seven-year period the value of his interest in the thrift plan had increased by $16,156.00.

We find nothing in the record which remotely justifies the unequal division made by the court. An examination of the judgment and findings of fact makes it obvious that the trial court intended to award 60% of the net value of the community assets to the wife and 40% to the husband. Because of the errors in characterization and valuation of the assets, the actual result is almost exactly the reverse of that intended by the court. We have no difficulty concluding that, if the trial court had correctly characterized and evaluated the property, a far different division would have been made.

If the fact that the trial court's errors led to the rendition of a decree bringing about a result the opposite of that which the trial court intended is not sufficient to justify a reversal, we find that in

These changes reduce the net value of the community estate from $157,222.06 to $92,229.83.

view of the husband's significantly greater income and earning capacity and the wife's physical problems, the award to the husband of assets representing 62% of the net value of the community estate constitutes a clear abuse of discretion and is manifestly unjust. Since there is no evidence of the value of the husband's separate estate, this unequal distribution cannot be justified on the theory that it is based on the disparity in the value of the separate estate of the parties.

We sever and leave undisturbed that portion of the decree which dissolves the marital relation between the parties. That portion of the decree dividing the marital estate is reversed, and that portion of the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

The reversal and remand is not to be interpreted as an attempt to interfere with the court's power to divide the estate between the parties in such manner as it deems fair and just based on the evidence.