ALLEN 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-094-CV





THOMAS EVERETT ALLEN AND THE ESTATE OF IVA ALLEN, DECEASED,




 
 APPELLANTS


vs.





BRENDA ANN ALLEN,



 APPELLEE



 




FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT



NO. 9062, HONORABLE D. V. HAMMOND, JUDGE PRESIDING



 





 Mrs. Brenda Allen, appellee, filed a petition for a divorce in the district court of
Llano County. Mr. Thomas Allen, appellant, filed a counter-petition. Mrs. Allen also made the
Estate of Iva Allen, appellant, a party to the case after Mr. Allen alleged that certain property
belonged to Iva Allen, his mother, and not the community estate. The case was tried before a jury
who found that the marriage was insupportable, that Mr. Allen had committed adultery, and that
both parties were guilty of cruel treatment and negligent infliction of emotional distress. The jury
valued the property, determined each party's net monthly resources, and found that Mr. Allen was
in control of $43,709.22 of unlocated cash. 

 In the decree, the trial court granted the divorce on the basis of adultery, appointed
Mrs. Allen sole managing conservator, set child support, and divided the community estate. Mr.
Allen and the Estate of Iva Allen appeal with eight points of error, challenging the trial court's
admission of evidence, its issuance of a protective order, and the legal and factual sufficiency of
particular jury findings and trial-court determinations. (1) Appellants also argue that the trial court
abused its discretion in dividing the community estate. We will affirm. 



DISCUSSION


 In the first point of error, Mr. Allen argues that the trial court erred in permitting
the testimony of Lindale E. Simpson and Mark Allen Pardaen, two patrol officers for the city of
Llano. Mr. Allen argues that Mrs. Allen did not supplement her interrogatory answers to identify
these witnesses until four days before trial. Because she did not supplement her discovery
answers thirty days before trial or demonstrate good cause for failing to do so, he argues that the
trial court should have excluded this evidence. Tex. R. Civ. P. 166b-6(a), 215(5). 

 Simpson and Pardaen testified that they had seen Mr. Allen with another woman
during the marriage. Mr. Allen complains that this testimony influenced the jury's findings of
adultery, cruel treatment, and negligent infliction of emotional distress, and ultimately influenced
the court to award a greater portion of the community estate to Mrs. Allen. 

 We cannot reverse a trial court error in the admission of evidence unless the error
was reasonably calculated to cause and probably did cause rendition of an improper judgment. 
Tex. R. App. P. 81(b)(1); Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). 
During trial, witnesses Bobby Najar, L.T. Des Champs, Carlos Ashley, Lee Ann Lewis, and Mrs.
Allen testified about Mr. Allen's relationship with another woman during the marriage. Because
of the cumulative effect of the testimony, we conclude that any error in the admission of the
testimony of Simpson and Pardaen was not harmful. See Gee, 765 S.W.2d at 396; McInnes v.
Yamaha Motor Corp., USA, 673 S.W.2d 185, 188 (Tex. 1984), cert. denied, 469 U.S. 1107
(1985); City of Austin v. Houston Lighting & Power Co., 844 S.W.2d 773, 791 (Tex. App.--Dallas
1992, writ denied). We overrule the first point of error.

 In his second point of error, Mr. Allen argues that the trial court erred in granting
a protective order for Mr. Henry Buttery, Mrs. Allen's father and president of Buttery Hardware,
a family-owned corporation. Mrs. Allen is a shareholder of Buttery Hardware and owns 11.87%
of the corporation's stock as her separate property. In serving Mr. Buttery with a notice of
deposition, Mr. Allen also requested, by a subpoena duces tecum, that Mr. Buttery produce
numerous financial records of Buttery Hardware, including income tax returns, schedules,
financial reports, balance sheets, and the corporate minutes of all shareholders' and directors'
meetings since 1979.

 Mrs. Allen's counsel, on behalf of Buttery Hardware and Mr. and Mrs. Buttery,
filed a motion for a protective order requesting that the court limit discovery. Counsel argued that
many of the records were immaterial to the case and would be unduly burdensome and oppressive
for the deponent to obtain compared to their probative value. After a hearing, the trial court
granted the protective order and limited Mr. Allen's subpoena duces tecum to: (1) The Buttery's
federal gift tax returns involving gifts to Mrs. Allen; (2) federal income tax K-1 returns for Mrs.
Allen from Buttery Hardware for all years she was a stockholder; (3) cancelled checks to Mrs.
Allen after 1971 representing gifts; (4) year-end financial statements for Buttery Hardware for all
years Mrs. Allen was a stockholder; (5) a copy of the Buttery Family Trust; (6) all payroll records
of Buttery Hardware Co., Inc., including bonus records, for Mrs. Allen while she was married
to Mr. Allen; and (7) all records of dividends paid to all stockholders of Buttery Hardware Co.,
Inc. while Mrs. Allen was a stockholder.

 Mr. Allen argues that the trial court erred because its protective order prevented
him from proving a Jensen claim. See Jensen v. Jensen, 665 S.W.2d 107 (Tex. 1984). Under
a Jensen claim, the community may be reimbursed for the increase in value of stock owned by
one spouse as separate property during the marriage. The amount of reimbursement equals the
value of time, toil, and talent expended by the owning spouse less any salary, bonus, dividends,
or fringe benefits already received by that spouse for her efforts in increasing its value. Id. at
110. 

 The trial court has discretion to use a protective order to narrow the scope of
discovery on a case by case basis. Tex. R. Civ. P. 166b(5); Axelson, Inc. v. McIlhany, 798
S.W.2d 550, 553 (Tex. 1990). Here, the trial court's limitation was reasonable because Mr.
Allen's reimbursement claim was not before the court at the time of the hearing. Mr. Allen did
not plead a reimbursement claim as to Mrs. Allen's separate property until almost eight months
after the hearing. Mr. Allen argues that Mrs. Allen's reimbursement claim put this matter in
issue. The party claiming the right of reimbursement, however, has the burden of pleading and
proving the claim. Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1983). 

 Moreover, to support reversal, the trial court's refusal to permit discovery must
have been such a denial of appellant's rights as was reasonably calculated to cause, and probably
did cause, the rendition of an improper judgment. Tex. R. App. P. 81(b)(1); Bruner v. Exxon
Co., U.S.A., 752 S.W.2d 679, 682 (Tex. App.--Dallas 1988, writ denied). Mr. Allen has the
burden of showing harmful error; harm is not presumed merely because discovery was denied. 
Cantrell v. Hennessy Indus., Inc., 829 S.W.2d 875, 877 (Tex. App.--Tyler 1992, writ denied),
cert. denied, 124 L. Ed. 2d 256 (1993). 

 In light of the discovery allowed, we are not convinced that Mr. Allen was
prevented from proving a Jensen claim even if the claim could be construed as properly before
the trial court at that time. Mr. Buttery's deposition testimony, the K-1 statements, the year-end
financial reports, the payroll records, dividends records, cancelled checks, and Mr. and Mrs.
Buttery's gift tax returns reflecting equal gifts of stock to each of the Buttery children, are
evidence of the worth of Mrs. Allen's share in the stock, the increase in value of that stock, and
the compensation she may have received for her work in the company. We conclude that Mr.
Allen has not met his burden of demonstrating harm and we overrule his second point of error. 

 The remaining points of error challenge the valuation or characterization of
community and separate property and the underlying evidence to support these findings. When
reviewing a no-evidence challenge, we review only the evidence and inferences that tend to
support the finding, while disregarding all evidence and inferences to the contrary. Weirich v.
Weirich, 833 S.W.2d 942, 945 (Tex. 1992). In reviewing a factual sufficiency challenge, we
must consider, weigh, and examine all of the evidence in the record, and set aside a finding only
if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Moreover, with respect to these findings, if a
mistake is made in the characterization of property, but the division is otherwise equitable, the
error is harmless and the division will not be disturbed on appeal. Magill v. Magill, 816 S.W.2d
530, 533 (Tex. App.--Houston [1st Dist.] 1991, writ denied). This principle applies equally to the
valuation of property. Cook v. Cook, 679 S.W.2d 581, 585 (Tex. App.--San Antonio 1984, no
writ). 

 Mr. Allen first challenges the legal and factual sufficiency of the evidence
supporting the jury's finding that he was in control of $43,709.22 of unlocated cash from deer
hunting income. The trial court awarded this "unlocated cash" to Mr. Allen, and Mr. Allen
essentially argues that this cash does not exist. The record contains the following evidence. Mrs.
Allen testified that Mr. Allen did not report all of his deer hunting income and that she knew he
was hiding records. She said that he hid large sums of cash in purple Crown Royal bags and
moved them to different places such as their bedroom drawer, his pickup truck, and a lock box
at the Llano Bank. She testified that she once found approximately $7,825 in the refrigerator in
their barn. Mr. Allen testified that he was storing cash in Crown Royal bags for his mother. 
Other witnesses testified that Mr. Allen paid for items with large sums of cash. 

 Mrs. Allen testified that she also found in their barn a number of hunting records. 
These records, which Mr. Allen offered and admitted into evidence, consisted of letters from
hunters leaving their deposits for the 1990 hunting season. Both parties prepared a summary of
these letters in separate attempts to estimate Mr. Allen's hunting income for 1990. Mrs. Allen
estimated $40,030, and Mr. Allen estimated $29,080. One of Mrs. Allen's expert, Bart Gillan,
testified that the hunting rental value was $7.15 per acre, totalling approximately $31,990.

 Mrs. Allen's accounting expert, Marcia Threadgill, relied on Mrs. Allen's estimate
of Mr. Allen's 1990 yearly hunting income derived from the hunters' letters, used this figure for
Mr. Allen's 1991 and 1992 yearly hunting income, and then deducted deer hunting income
deposits reflected in Mr. Allen's and his mother's bank records. Threadgill's calculations showed
$43,709.22 of unaccounted deer hunting income in Mr. Allen's possession. This testimony and
her calculations admitted into evidence, along with Mrs. Allen's testimony that Mr. Allen did not
report all of his income and hid large sums of cash throughout their home, provide sufficient
evidence to support the jury's findings.

 Mr. Allen disputes both Threadgill's reliance on $40,030 as his 1990 deer hunting
income and her projected income for the first half of 1992, in which she estimated half the amount
of $40,030. He also claims that she failed to deduct two deposits from her calculations. The jury
was entitled to believe Mrs. Allen's estimate of the hunting income instead of Mr. Allen's. 
Pilkington v. Kornell, 822 S.W.2d 223, 230 (Tex. App.--Dallas 1991, writ denied) (trier of fact
may believe one witness and disbelieve others). Moreover, Threadgill testified that she examined
cash record ledgers, tax returns, checking accounts, and bank records of Mr. Allen and his
mother's estate, as well as auction sales slips, in order to calculate cash on hand. The jury was
entitled to believe Threadgill's testimony. Id. In addition, Mr. Allen's own estimate of his yearly
income, $29,080, allows for unaccounted cash to be in his possession based on the calculations. 


 Finally, the difference in the division percentage based on Mr. Allen's version of
the facts is insignificant when compared to the entire community estate. See King v. King, 661
S.W.2d 252, 255 (Tex. App.--Houston [1st Dist.] 1983, no writ) (holding that wife did not show
an unjust division when trial court's mischaracterization of stock as separate property resulted
only in a few percentage points difference in the value of community property awarded to wife). 
Mr. Allen argues that the unlocated cash awarded to him constitutes ten percent of the entire
community estate which he estimates is worth $453,701. Had the trial court excluded this amount
from the estate and awarded Mr. Allen no additional property, we do not believe the division
would be manifestly unjust. We conclude that there was legally and factually sufficient evidence
to support the jury's finding and overrule Mr. Allen's third and fourth points of error. See Rafidi
v. Rafidi, 718 S.W.2d 43, 46 (Tex. App.--Dallas 1986, no writ) (sufficient evidence supported trial
court's findings that husband fraudulently concealed unaccounted sums of salary and that
husband's explanation as to origin, purpose, and disposition of the fund lacked credibility). 


 Mr. Allen next complains of the court's determination that $13,658.61 from a joint
money market account was Mrs. Allen's separate property. He asserts the money is
presumptively community property. See Tex. Fam. Code Ann. § 5.02 (West 1993). He argues
that there was legally and factually insufficient evidence to rebut this presumption and that the trial
court erred in refusing his jury question as to whether these funds were separate or community
property.

 To show that these funds were separate property, Mrs. Allen introduced into
evidence an exhibit prepared and explained by Threadgill, who summarized all of the withdrawals
and deposits in a joint money market account. In her exhibit, she listed all of the deposits and
withdrawal transactions throughout the marriage, tracing back to the original deposit that Mrs.
Allen testified she received as a gift from her grandparents as separate property before the
marriage. Threadgill concluded that the balance never went below this initial deposit and
therefore, under the community-first-out presumption, the $13,700 remained Mrs. Allen's
separate property. See Harris v. Harris, 765 S.W.2d 798, 802 (Tex. App.--Houston [14th Dist.]
1989, writ denied) (community property presumption dispelled when separate property's identity
can be traced). 

 Mr. Allen contends that this exhibit was inadmissible because it was not properly
proven up under the voluminous summaries exception. Tex. R. Civ. Evid. 1006. However, even
if the exhibits themselves were inadmissible, Threadgill's testimony as to her opinion of the
running balance of the account based on her review of the bank records was still admissible. An
expert may rely on facts or data which are inadmissible if they are of a type reasonably relied
upon by experts in a particular field. Tex. R. Civ. Evid. 703. The trial court could reasonably
conclude that accountants rely on individual bank records to trace deposits and withdrawals and
determine the running balance of accounts. See Welder v. Welder, 794 S.W.2d 420, 430 (Tex.
App.--Corpus Christi 1990, no writ) (holding that under the circumstances of that case,
accountant's testimony as to tracing of separate property funds was admissible under Rule 703
even if summary records were inadmissible). 

 Threadgill's testimony coupled with Mrs. Allen's testimony that the original
amount was a gift to her provided legally and factually sufficient evidence to rebut the community
property presumption. See Newland v. Newland, 529 S.W.2d 105, 107-08 (Tex. Civ. App.--Fort
Worth 1975, writ dism'd) (uncorroborated testimony of spouse can rebut the statutory
presumption). Moreover, even if the property was mischaracterized, Mr. Allen has not shown
that the court would have made a different division or that the result would have been manifestly
unjust. Cook, 679 S.W.2d at 585. We overrule points of error five through seven. In the
eighth point of error, Mr. Allen argues that the trial court abused its discretion in dividing the
community estate by awarding a disproportionate amount in favor of Mrs. Allen. Neither the trial
court nor the jury set out the percentage of the estate awarded to each party. Mr. Allen relied on
Mrs. Allen's inventory appraisement, the trial court's decree, the jury's findings, and the parties'
stipulations to determine the value of the individual property awarded each party. (2) Mr. Allen
concludes that the net community estate totalled $413,701, and that he was only awarded
$138,749, or 30.58% of the estate. Mrs. Allen notes that Mr. Allen ignores specific awards to
him totalling $13,005. (3) She argues that the decree actually provides for a 65%-35% division.

 The trial court shall order a division of the estate in a manner the court deems just
and right, having due regard for the rights of each party and any children of the marriage. Tex.
Fam. Code Ann. § 3.63 (West 1993). The trial court has wide discretion in dividing the
community estate and does not have to divide it equally. Murff v. Murff, 615 S.W.2d 696, 698-99
(Tex. 1981); see e.g., Oliver v. Oliver, 741 S.W.2d 225, 228-29 (Tex. App.--Fort Worth 1987,
no writ) (no abuse of discretion in making 80%-20% division). In making its division, the court
may consider such factors as the disparity of incomes or earning capacities, benefits which the
party not at fault would have derived from the continuation of the marriage, and the size of the
separate estates. Murff, 615 S.W.2d at 698-99.

 Although the trial court did not provide the basis for its division, the disparity
between the separate estates and the parties' monthly net resources provides a reasonable basis for
the trial court's division. The evidence showed that Mr. Allen has a sizeable separate estate. 
Mrs. Allen's appraisal exhibit estimated Mr. Allen's separate estate to be worth approximately
$2.5 million, while Mr. Allen's appraisal exhibit estimated $1.8 million. In contrast, Mrs.
Allen's estate, as reflected in her appraisal statement, was worth only $288,428.19. 

 The jury's findings as to Mr. Allen's and Mrs. Allen's net monthly resources are
similar. The jury found that Mr. Allen had net resources of $5,532.29 per month while Mrs.
Allen had $2,000 per month, less than half of Mr. Allen's amount. Finally, in its decree, the trial
court dissolved the marriage on the grounds of adultery, based on the jury finding. The trial court
was entitled to consider fault as a factor in the marriage. Because the evidence reveals valid
factors on which the trial court could have based an unequal division, there was no abuse of
discretion. We overrule the eighth point of error. 

 In conclusion, we overrule appellants' points of error and affirm the judgment.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and B.A. Smith;

  Justice B. A. Smith Not Participating


Affirmed


Filed: March 30, 1994


Do Not Publish
1. Mr. Allen originally brought four additional points of error, numbers nine through twelve,
challenging the trial court's award of child support and the jury's finding of Mr. Allen's net
monthly resources. However, the parties compromised this portion of the case, and Mr. Allen
waived these points of error by letter to the Court dated January 18, 1994.
2. These calculations are set out in Mr. Allen's appendix one attached to his brief.
3. These two awards consist of a $9,000 reimbursement claim against Mr. Allen's separate
property and a judgment against Iva Allen's estate in favor of the community worth $4,005. 
In his appendix, Mr. Allen states that these awards are valueless and, therefore, he does not
include them in the amount awarded to him.