# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00128-CV

**Barbara Sias-Chinn, Appellant**

**v.**

**Fred Henry Chinn, Appellee**

FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
NO. 231,933-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the district court rendered a final divorce decree ending the thirty-four year marriage of two military retirees, Barbara Sias-Chinn and Fred Henry Chinn, and dividing their marital property. In eight issues, Barbara[1] urges that the district court erred in awarding Fred separate-property portions of her military retirement pay, improperly restricted her right to waive her retirement benefits in order to receive Veterans' Administration ("VA") disability pay, and miscalculated the values of numerous other community assets to an extent that the overall property division was manifestly unjust and unfair. We will modify the decree to eliminate the restriction against Barbara waiving her military retirement pay to receive VA disability pay and, as modified, affirm.

---

[1] Because the parties' surnames are similar, we refer to them by their first names to avoid confusion.

Barbara and Fred were married in December 1976, and each sued the other for divorce in 2008. The property division was tried to the district court on two separate days in March and July 2010, and the court signed the final divorce decree in January 2011. As both parties acknowledge on appeal, the evidence regarding the identity and value of community assets is rather confusing, disjointed, and sometimes incomplete or inconsistent, notwithstanding expressions of concern to that effect by the district court during trial. The state of the record appears attributable, at least in part, to Barbara's failure or refusal to comply with pretrial discovery requirements and to the fact that the parties proceeded to trial with only nascent information concerning numerous assets within her control. For example, the record reflects that despite at least one court order compelling her to produce bank statements and other documents reflecting the value of the accounts she controlled, Barbara had not produced account statements for periods subsequent to 2008, and several of those were annual statements that were unaccompanied by monthly statements. On the second day of trial, in July 2010, Barbara finally divulged what she claimed were updated balances for some of the accounts, basing her testimony on documents she had not previously produced, a few of which were introduced into evidence during the last hour of the trial. Barbara also claimed that she had begun cashing her paychecks rather than depositing them into a bank account and paying various expenses in cash.

The basic thrust of Barbara's issues on appeal is that the state of the trial record resulted in the district court's dividing the community estate based on legally or factually insufficient evidence of the identity and values of several individual assets it purported to award. Barbara further asserts that the combined effects of the court's "miscalculations" or "confusion" regarding individual

2

assets yielded a disproportionate property division that was manifestly unjust and unfair. Barbara has also complained that the district court awarded Fred part of her separate-property interest in her military retirement pay and that it erred in purporting to prohibit her from waiving her right to military retirement pay in favor of VA disability.

We can quickly dispose of Barbara's complaints regarding her military retirement pay. The district court heard evidence that both Barbara and Fred had begun serving in the U.S. Army prior to their marriage—Barbara for about three-and-a-half years and Fred for over a decade—and that each reached retirement during the marriage, Barbara in 1995 and Fred in 1986. The parties concur that the community estate subject to division included the portion of each party's military retirement benefits corresponding to the proportion of his or her total creditable service that accrued during the marriage and that the remaining portion represented the party's separate property. *See, e.g.*, *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 16 n.12 (Tex. App.—Waco 2002, no pet.) (explaining that community interest in retirement benefits is calculated by dividing the number of months the parties were married during the employee spouse's employment by the total number of months in which the employee spouse served). In the divorce decree, the district court awarded both Barbara and Fred "[f]ifty percent (50%) of the community interest" in the other's military retirement pay "and more particularly specified in the domestic relations order signed by the Court in this cause." However, in the domestic relations order (DRO) contemplated by the decree, and also incorporated into it, the district court "ORDERED AND DECREED THAT FRED HENRY CHINN have judgment against and recover from BARBARA SIAS-CHINN 50% of BARBARA SIAS-

CHINN'S disposable retired pay" without mentioning or distinguishing the community versus separate property interests in that pay.[2]

Emphasizing the DRO's language, Barbara urges that the district court erroneously awarded Fred a share of her separate property, requiring reversal. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) (only community property is subject to division; a trial court cannot divest a spouse of separate property). However, as Fred emphasizes, the decree explicitly awarded him a share of only the community interest in Barbara's retirement pay. To the extent the DRO exceeds this limitation, it has no legal effect. *See* Tex. Fam. Code Ann. § 9.007 (West 2006) (orders to enforce a final divorce decree "may not alter or change the substantive division of property"; "[a]n order . . . that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable"); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (stating that the district court "was without authority to enter a QDRO altering the terms of the decree"); *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (stating that the district court should have issued a clarifying QDRO because prior QDRO did not divide property consistent with decree and, thus, was void). We can remedy any error in this discrepancy by modifying the DRO to clarify that Fred is being awarded "50% of *the community interest in* BARBARA SIAS-CHINN'S disposable retired pay."[3]

---

[2] The appellate record does not include a counterpart DRO effectuating the district court's award to Barbara from the community interest in Fred's retirement pay.

[3] Barbara also observes that the district court did not quantify the value of the community interest in her retirement pay or determine its present value as of the time of divorce. But neither party presented evidence of what these calculations would be, instead describing these assets solely

4

As for Barbara's right to waive her military retirement pay in favor of receiving VA disability pay, Fred concedes error and that we should modify the DRO to delete the following language:

> IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Service Member shall not reduce the amount equal to the percentage of the disposable retired pay or of the disposable retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Service Member shall not merge her military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Service Member's retired pay as awarded in this order, unless otherwise ordered herein.

*See Limbaugh*, 71 S.W.3d at 17. We will do so.

Turning now to Barbara's remaining complaints regarding the valuation of other community assets awarded in the decree, we apply an overarching abuse-of-discretion standard. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). In general, a trial court is said to abuse its

___

in terms of the monthly payment amounts they were receiving (Barbara was receiving $4,480 in retirement pay and Fred a total of just under $3,000 per month in military retirement and disability pay). The district court ultimately found that the present value of the community interest in both Barbara's and Fred's military retirement was simply "unknown" but that "an equal (50%/50%) division of such community property portions is just and right." To the extent Barbara is complaining that the district court erred or abused its discretion in attempting to divide the community estate without taking into account the net present value of the community shares of military retirement, *see Berry v. Berry*, 647 S.W.2d 945, 946 (Tex. 1983), we hold that Barbara waived error. Alternatively, we conclude, for reasons similar to our disposition of Barbara's other complaints below, that any error or abuse of discretion in this regard would not rise to the level of rendering the overall property division manifestly unjust or unfair. This is especially so given that the awards of retirement pay were largely offsetting. At most, the district court's percentage split of the community interest in the parties' respective retirement pay might be a subject of a motion to modify the DRO below to clarify how the awards are to be implemented, but it does not constitute reversible error on this record.

5

discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without

supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Here, this inquiry distills

down to two analytical steps: (1) determining whether the district court had sufficient evidence

upon which to exercise its discretion, i.e., addressing Barbara's challenges to the legal and factual

sufficiency of the evidence supporting the district court's findings concerning the identity and values

of various community assets; and (2) determining whether the district court erred in its application

of that discretion. *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006,

pet. denied). Under the first step, we apply the familiar standards governing legal and factual-

sufficiency review.[4] Under the second, we consider whether, based on the evidence, the trial court

---

[4] A party challenging the legal sufficiency of the evidence supporting an adverse finding on an issue on which an opposing party has the burden of proof will prevail if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W3d 802, 810 (Tex. 2005); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (internal quotes omitted)). But if the evidence is so weak that it does no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995).

When conducting a legal-sufficiency review, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 807. We indulge every reasonable inference that would support the trial court's findings. *Id.* at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate that the finding is so contrary

6

made a reasonable decision—that is, that the court's decision was neither arbitrary nor unreasonable—in determining a "just" and "right" division of the community estate. *See* Tex. Fam. Code Ann. § 7.001 (West 2006) (stating that trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party"). The trial court may properly consider many factors in fashioning a just and right division, including the spouses' capacities and abilities, business opportunities, education, relative financial condition and obligations, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699. And, "the consideration of a disparity in earning capacities or of incomes is proper and need not be limited by 'necessitous' circumstances." *Id.* "[I]t is presumed that the trial court exercised its discretion properly." *Id.* at 699 (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)). Importantly, even if we determine that the district court erred in valuing individual community assets, such an error does "not require reversal unless the complaining party shows that, because of the error[] in valuation, the division made by the trial court is manifestly unjust." *Cook v. Cook*, 679 S.W.2d 581, 585 (Tex. App.—San Antonio 1984, no writ).

Barbara quantifies the combined impact of the asserted "valuation mistakes" regarding the couples' bank accounts, certificate of deposit accounts, IRA accounts, and the couples' personal property as a reduction of her award, or increase in Fred's, totaling $203,409.22, yielding

---

to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When an appellant attacks the factual sufficiency of an adverse finding on an issue for which he had the burden of proof, the appellant must demonstrate that the "adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must not merely substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

an overall 56-44 percent split in Fred's favor. As a threshold matter, we question whether a 56-44 percent split, assuming it occurred, would have amounted to an abuse of discretion on this record. As Barbara acknowledges, the district court was not required to divide the community estate equally, so long as its division was equitable. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). In making its division, the district court could properly have considered evidence that Barbara earned more in military retirement pay than Fred, who had retired from the military earlier to care for the couple's young children, and that Barbara had worked as a dentist, while Fred served as her office administrator. *See Murff*, 615 S.W.2d at 699 (allowing courts to consider spouses' capacities and abilities, relative financial conditions, business opportunities, and education).

Additionally, and perhaps more importantly, the district court also could have considered evidence that Barbara violated provisions of temporary orders enjoining the parties from "[m]isrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties," "[m]aking withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order," or "[s]pending any sum of cash in the possession or subject to the control of either party for any purpose, except as specifically authorized by this order" by withdrawing over $30,000 from one of the couple's accounts, by cashing and spending her paychecks, and by refusing to disclose documents showing the current balances of many of the couple's accounts. *See id.* Further inferences that Barbara sought to thwart Fred's rights or otherwise disregard her legal obligations might also be reasonably drawn from proof that Barbara

8

had information for many of the couple's accounts sent to a post-office box to which Fred did not have access. Additionally, the trial transcript reflects that Fred's counsel had filed three motions to compel Barbara to produce current financial statements for the couple's accounts, that Barbara was ordered to produce the documents at least once, and that Barbara had failed to comply. The district court could also have properly considered that Barbara violated temporary orders directing Barbara to pay Fred "temporary spousal support in the sum of $2,500.00 per month" from March 2009 through time of trial. *See id.* (court may consider failure to pay temporary support in equitably dividing community estate); *Jones v. Jones*, 699 S.W.2d 583, 585 (Tex. App.—Texarkana 1985, no writ) (same). The district court ultimately found that Barbara had failed to pay Fred $30,000 in spousal support from September 2009 through August of 2010, but did not explicitly award that sum in the decree. The record further reflects that Fred's counsel requested that the spousal support amount be incorporated as an offset in the judgment.

In any event, while Fred concedes that a few of Barbara's evidentiary-sufficiency challenges may have merit, any unsupported valuation findings are not of sufficient economic impact on the ultimate property division to warrant reversal. The evidence reflects that Barbara and Fred acquired significant assets during their marriage. They purchased a house in 1992, which they furnished together. When Barbara retired from the military in 1995, she and Fred acquired a lot on which they constructed a commercial office building to serve as the site of Barbara's dental practice and also generate rental income from tenants. Barbara started the dental practice in 1996, with Fred working as the office administrator. Over time, the couple acquired roughly twenty bank, certificate of deposit, and IRA accounts. Barbara challenges the trial court's valuations of the dental practice,

9

the commercial building in which the practice is housed, the couple's personal property, and ten of the couple's accounts.

Barbara asserts that the district court "overvalued the dental practice at $300,000." In support of the $300,000 value, Fred presented evidence that, in 2005, Barbara had sold half of her dental practice to another dentist, Dr. Myra Gay, for $152,000. A copy of the sales agreement reflects that the amount included values for office furniture, dental equipment, drugs and supplies, patient information, and goodwill. Fred further notes that Barbara reacquired one hundred percent of the practice in 2009 and remains its sole owner. In addition, Barbara testified that, since 2005, she has purchased another $68,000 worth of dental equipment and, as of time of trial, she had roughly six months of unbilled accounts receivable totaling around $180,000.[5] Barbara attacks the district court's valuation by pointing out that she later fired Fred, several other employees departed thereafter, and she had experienced health problems. She further testified that the value of the dental equipment purchased by the practice has depreciated over time. Although she does not indicate the amount by which these factors reduce the value of the practice, she urges that these factors render the evidence legally and factually insufficient to support the district court's valuation. However, in the face of testimony and documents showing that, at least in 2005, the value of the practice (*without* taking into account accounts receivable) exceeded $300,000, and testimony that the practice had, since then, acquired substantially more equipment and has a large amount in accounts receivable,

---

[5] Barbara agreed that the calculation of $180,000 "may be correct" based on the fact that she had six months of receivables worth about $30,000 per month, but she claimed she was unable to confirm that total, even with the use of software used by her office to calculate the amount of accounts receivable because, Fred, not she, handled accounting of receivables.

we determine that reasonable and fair-minded people could have reached the same conclusion as the district court and that the district court's valuation of the dental practice was not against the great weight and preponderance of the evidence. The court did not abuse its discretion. *See In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998).

Barbara also challenges the district court's finding that the commercial building is worth $772,500, citing her testimony that the value of the building, for which she and Fred paid over $568,000 in 1995, had decreased to less than $412,320. She points out that the Bell County Appraisal District valued the building at around $470,000 and that she and Fred were only able to obtain a loan for $395,000 when they had the building constructed in 1995. However, Fred presented the testimony of a different appraiser who valued the building at $772,500, the same value that the district court ultimately found. In challenging the appraiser's value of the building, Barbara asserts that "the appraiser did not consider that the building was a dental office building when performing his appraisal." However, the appraiser testified—and his report shows—that he performed a comparative market analysis of the building by comparing it to six other similar commercial buildings, two of which were dental offices. In valuing the commercial building, the appraiser considered the uses, ages, sizes, accessibility, and other characteristics of the comparable buildings. He testified that he specifically used the two dental offices in his analysis because he was valuing a dental office. We cannot conclude that the appraisal and testimony of the appraiser constitute legally or factually insufficient evidence of the building's value. Given the conflicting evidence of values of the dental office, it was within the district court's discretion to conclude that the dental office was worth $772,500. *See Lifshutz v. Lifshutz*, 61 S.W.3d 511, 515

11

(Tex. App.—San Antonio 2001, pet. denied) ("When there is conflicting evidence, the appellate court usually regards the finding of the trier of fact as conclusive.").

In challenging the valuation of many of the couple's accounts, Barbara urges that the district court lacked sufficient evidence to support its valuations of these accounts because the "balance on various accounts was anything but clear or current." The district court agreed, noting that Barbara's failure to produce current account statements left the court in the position of having to divide property by "trying to update 2008 balances on the fly." The district court used the produced statements, an inventory submitted by Fred, and a proposed property division submitted by Barbara to keep track of the values of various accounts, making adjustments to the balances as the parties testified about them. Barbara contends that the district court overvalued ten accounts because, for six of the accounts, the district court found them to contain more money than the balance reflected on the statements she provided, and the remaining four, Barbara contends, do not exist or are duplicates of other accounts. When asked about current values of several of her accounts, Barbara was unable to testify as to specific values, stating as to one account that the value fluctuated between $100,000 and $130,000 and as to others, that she transferred money between them to pay bills and taxes, so she could only broadly approximate what the account balances might be. In general, she could not explain what happened to money deposited or withdrawn from accounts, other than to speculate that it might have been used to pay taxes, "[b}ecause I will tell you, I have so many transactions between all these accounts."

Fred concedes that, based on his calculations, it is possible that three of the accounts awarded to Barbara may be overvalued by a range of $17,221.73 to $39,702.06. However, he also

cites evidence that three accounts awarded to Barbara were undervalued by a range of $18,977.80 to $36,477.80. He further explains that, as to three of the accounts that Barbara alleges do not exist, he provided testimony of the existence and balance of those accounts, which Barbara did not challenge. Having reviewed the bank statements, an inventory introduced into evidence, and the parties' testimony regarding the changing values of accounts, we cannot say that the district court's determination of values were based on legally or factually insufficient evidence. Fred's brief on appeal does not address a fourth account that Barbara alleges is nonexistent (the "314 account"), but Fred did file in the district court an "Amended Proposed Division of Property" listing the disputed account as having a balance of $22,556.01. The district court clarified at the second day of trial that it would use that Amended Proposed Division for the purpose of tracking the updated values of the parties' accounts, and Barbara was provided a copy of the Amended Proposed Division and questioned in some detail about the values of other accounts listed thereon, but she did not discuss or challenge the value of the of the 314 account. We note that "the trial court may take judicial notice of matters in its files." *Vannerson v. Vannerson*, 857 S.W.2d 659, 670 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (determining that the trial court could rely on an inventory not introduced into evidence in dividing and characterizing parties' property in a divorce suit where husband alleged he was awarded $68,985 of nonexistent property). Thus, we conclude that the Amended Proposed Division constituted legally and factually sufficient evidence of the existence and value of the 314 account, and the district court did not abuse its discretion in relying on that unchallenged amount in making its valuation. In any event, considering the size of the parties' estate, which counsel for Barbara valued at $3,183,242.88, a valuation error in the amount of

13

$22,556.01 would have reduced Barbara's share of the estate by less than a single percentage point. On this record, Barbara has not shown that any error concerning the value of the 314 account resulted in a manifestly unjust property division. *See Cook*, 679 S.W.2d at 585.

As for the couple's personal property, Barbara complains that the district court overvalued the personal property awarded to her by $15,000. When Barbara left the marital home, it is undisputed that she took property from the home to furnish an apartment to which she moved. Fred introduced an inventory in which he valued that property at $15,000, and at trial, he estimated that she took "a good $5,000" worth of property with her. Fred's inventory also valued the couple's personal property remaining in the home at $75,000. The district court adopted the values presented in the inventory. Barbara introduced no evidence at trial to show the value of the parties' household furnishings or the value of the items she took with her when she moved out. She now asserts that the lack of evidence on this point shows that the district court overvalued her personal property by the full amount of $15,000, and she further states that the court had no evidence of the value of the remainder of the couple's household furnishings, which were divided evenly between the parties. Contrary to Barbara's argument, such a lack of evidence of value of property in the district court record does not require reversal. Each party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division. *Murff*, 615 S.W.2d at 698-99; *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). "When a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas

14

2003, no pet.); *accord Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied); *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex. App.—Austin 1994, no writ). Instead, a party complaining of a property division "must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion." *Finch*, 825 S.W.2d at 221; *see Burney v. Burney*, 225 S.W.3d 208, 215 (Tex. App.—El Paso 2006, no pet.) ("It is the responsibility of the parties to provide the trial judge with a basis upon which to make the division."). Having failed to provide any evidence of the value of the household furnishings that she took or left in the marital home, Barbara cannot now challenge the values listed in the inventory in evidence on appeal, nor can she show how any alleged valuation error would have resulted in a manifestly unjust division of property. *See Cook*, 679 S.W.2d at 585.

## CONCLUSION

We modify the DRO to be consistent with the decree's award to Fred of half of the community interest in Barbara's military retirement pay. We also delete the judgment's restriction on Barbara's right to waive military retirement benefits in order to receive VA disability pay. We affirm the judgment as modified.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Modified and, as Modified, Affirmed

Filed:   February 29, 2012

15