**Stephen C. KRAMER, Individually, and as Representative of the Estate of Jennie Roland Kramer, Deceased, and as Next Friend of Geoffrey Kramer and Lindsey Kramer, Minor Children, Appellants,**

v.

**LEWISVILLE MEMORIAL HOSPITAL, Appellee.**

No. 2–90–158–CV.

Court of Appeals of Texas, Fort Worth.

May 6, 1992.

Rehearing Overruled June 10, 1992.

Morgan & Weisbrod, Les Weisbrod, Michael S. Box, Dallas, for appellants.

Davis & Davis, P.C., Peter R. Meeker, Austin, for appellee.

Before JOE SPURLOCK, II, HILL and FARRIS, JJ.

OPINION

JOE SPURLOCK, II, Justice.

This case involves a medical malpractice action by appellants, Stephen Kramer, and his children Jeffrey and Lindsey Kramer, against appellee, Lewisville Memorial Hospital ("Hospital"), Drs. Burgess and Eich, Cytotechnologist Frances Jane Nightingale, and other professional medical groups and centers. All defendants except appellee settled with appellants before the trial. In accordance with the jury's verdict, the trial court entered a take-nothing judgment in favor of appellee and this appeal was brought. The suit was brought under the provisions of the Texas wrongful death act, TEX.CIV.PRAC. & REM.CODE ANN. §§ 71.002 & 71.004 (Vernon 1986), and the Medical Liability and Insurance Improvement Act TEX. REV.CIV.STAT.ANN. art. 4590i (Vernon Pamp. 1992).

Appellants raise three points of error in which they argue: that the trial court erred in refusing to submit certain questions to the jury; that the court erred in admitting expert testimony regarding an unscientific experiment; and that the court should have excluded many of appellee's witnesses because the appellee failed to identify them in properly verified interrogatory answers. We find that the court erred, but that the error committed probably did not lead to an improper verdict.

Jennie Kramer died on October 31, 1986, from cancer of the cervix which had metastasized to her lungs. She had visited her gynecologist, Dr. Bruce Eich, fourteen months earlier in August 1985, complaining of excessive bleeding. Although the gynecologist diagnosed Jennie's condition as a yeast infection, he also took a pap smear and sent it to appellee's laboratory for reading. The smear slide was screened by Frances Nightingale, a cytotechnologist employed by appellee, who found the slide negative for cancer. Dr. Richard Burgess, a pathologist for appellee and Nightingale's supervisor, then screened the slide as part of the hospital's quality control program. He also found that the smear was negative for cancer.

Still suffering from irregular bleeding and in pain, Jennie saw another doctor, Dr. Michael Burgess, in November 1985. This second physician *did not* do another pap smear, but did various other tests. He decided that Jennie's condition was normal and prescribed medication.

By December of 1985, Jennie could feel a hardening in her cervix. In spite of that and her continued bleeding, Dr. Michael Burgess decided that nothing further needed to be done for Jennie. In February of 1986, Jennie felt a hard spot in her vagina. Dr. Burgess finally performed a cervical biopsy and diagnosed her as having cancer.

In March 1986, Jennie underwent surgery to remove cancerous tissue and lymph nodes in her pelvic area. In April she was again admitted to the hospital because of bleeding. In May, X-rays showed changes that ultimately revealed that the cancer had metastasized to her lungs. In September 1986, her lung cancer finally diagnosed, Jennie began chemotherapy treatments. She died on October 31, 1986.

The basis of appellants' action against appellee is that had the hospital's lab not misread Jennie's 1985 pap smear, and had the hospital lab properly interpreted the slide, she would have been able to get appropriate treatment and her life would have been saved. The allegation that the hospital negligently read the slide is based, at least in part, on the fact that the cytotechnologist, Nightingale, performed the interpretation of the slide at her home away from her place of employment at the hospital. In answer to special issues, the jury found that Nightingale's conduct was not negligent and therefore did not reach the proximate cause issue as to her. The jury found that Dr. Richard Burgess was negligent, but that his negligence was *not* a proximate cause of Jennie's death. The jury also found that although appellee was negligent, its negligence did not proximately cause Jennie's death.

Appellee argues that there is sufficient evidence for the jury to have believed the testimony of Drs. Burgess and Bagwell that Jennie's cancer had already grown to such an extent by August 1985 (the time

within which the negligence would have occurred) that it was not curable. There is no attack upon the sufficiency of the evidence supporting the answers to the issues.

We will address points of error two and three first, as they relate to the evidence at trial.

■ In point of error three, appellants argue the trial court erred in refusing to exclude several of appellee's witnesses because the supplemental interrogatory answers identifying those witnesses were not properly verified. *See* TEX.R.CIV.P. 168(5). There is no contention that the supplemental interrogatory answers were untimely, or incomplete, or otherwise *materially* defective. Appellants argue that because the supplemental answers were verified based upon "the best of [the affiant's] knowledge and belief" the witnesses named in those answers should not have been allowed to testify, especially since the court granted a similar motion to exclude witnesses against appellants at an earlier trial setting.

Three courts of appeals have recently issued opinions on this particular legal issue, and each has reached the same conclusion: *Jones v. Kinder*, 807 S.W.2d 868 (Tex.App.—Amarillo 1991, no writ); *State v. Munday Enterprises*, 824 S.W.2d 643 (Tex.App.—Austin 1992, writ filed); and *Circle Y of Yoakum v. Blevins*, 826 S.W.2d 753 (Tex.App.—Texarkana, 1992, n.w.h.). Discovery sanctions under TEX. R.CIV.P. 215 are to be handled by the trial court, with discretion. The supreme court requires, however, that the sanctions be appropriate and just. *Transamerican Natural Gas v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). In *Jones*, the Amarillo court pointed out that the Rules of Civil Procedure do not require the supplemental answers be verified, only the original interrogatory answers. *Jones*, 807 S.W.2d at 873. Where the original answers were properly verified, and the trial court allows the witnesses identified in the supplemental answers to testify after hearing the objections and arguments, we will not overturn the jury verdict and trial court's ruling on such a highly technical error that

goes to a lack of form and not substance. Point of error three is overruled.

In point of error two, appellants contend the trial court erred in refusing to exclude Dr. Sloan Leonard's testimony regarding an unscientific hearsay "experiment." Appellants filed a trial brief objecting to a portion of Dr. Leonard's deposition testimony, and re-urged their objections at trial. This testimony concerned an "experiment" in which Dr. Leonard gave ten slides to several cytotechnologists for screening. One of the ten was the slide of Jennie Kramer. He then testified to the screening accuracy of the cytotechnicians in his lab, as well as whether the failure of Nightingale to see the abnormal cells on the slide was within the appropriate standard of care.

Appellants argue the testimony should have been excluded because: the "experiment" and the results were based upon hearsay; Dr. Leonard could not give the names of the people who participated in his "experiment"; Dr. Leonard admitted the "experiment" was not scientific, and that he had destroyed all written verification and notes; and no proper predicate was laid to establish that this "experiment" was substantially similar to Nightingale's reading of Jennie Kramer's pap smear slide. Appellee asserts the information given to Dr. Leonard by the people who viewed the ten slides is admissible under TEX.R.CIV. EVID. 703, as information of a type typically relied upon by other persons in his field in forming their expert opinions.

During a break at trial, the jury was excluded and the trial judge informed the parties he would allow "the experiment" to come in under the evidence rules. Neither party made a statement on the record as to the subject of the ruling. The ruling comes after testimony of Stephen Kramer and prior to the video testimony of Dr. John Burroughs, but *appears* to relate to arguments presented to the trial judge at an earlier time in the trial concerning potential testimony of Dr. Leonard. Since appellee has not disagreed with appellants' statement that the ruling relates to Dr. Leonard's testimony, we will assume the

court was referring to the "experiment" involving the ten-slide group. *See* Tex. R.App.P. 74(f). However, the parties are admonished that it is their responsibility to see to it that the trial record is clear to the appellate court. *See, e.g., Federal Pacific Electric Co. v. Woodend*, 735 S.W.2d 887, 891 (Tex.App.—Fort Worth 1987, no writ).

Dr. Leonard is President of Dallas Pathology Associates and DPA Laboratory. He testified the lab employed twenty cytotechnologists and did one-fourth to one-third of a million Pap smear screenings per year. His testimony was conflicting as to the reason he asked several of his cytotechnologists to examine the ten slides. He testified he did the "experiment" at the request of one of the defense attorneys, but on voir dire testified he was doing it as an "educational effort" toward his own employees to see how accurate they would be at detecting the abnormal cells in a slide that he knew had already been missed by a pathologist and a cytotechnologist. There was additional testimony from Dr. Leonard concerning the procedure he followed in setting up the ten-slide group and the varying results his screeners gave. He testified his procedure was in accord with standard practices in other screening labs, and that labs routinely rely on such screening results to test the accuracy of their labs.

■ Appellants are correct that some of Dr. Leonard's testimony concerning the review of the ten-slide group by persons in his lab was based on hearsay. "The testimony of an expert may be admissible while at the same time the facts or data underlying that testimony may be inadmissible.... [T]he use of the permissive word 'may' [in Tex.R.Civ.Evid. 705] does not indicate an absolute right of the expert to disclose all of the facts and underlying data under all circumstances." *Beavers v. Northrop Worldwide Aircraft*, 821 S.W.2d 669, 674 (Tex.App.—Amarillo 1991, writ filed) (citations omitted). While such supporting evidence is not automatically admissible because it *is* supporting data to an expert's opinion, neither is it automatically excludable simply because it is hearsay. The decision whether to admit or exclude evidence

is one within the trial court's sound discretion. *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 389 (Tex.1965). "Reversible error does not usually occur in connection with evidentiary rulings unless appellant demonstrates that the whole case turns on the particular evidence excluded or admitted." *Dudley v. Humana Hospital Corp.*, 817 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1991, no writ). *See also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex.1990).

■ Dr. Leonard testified as an expert on screenings by pathologists and cytotechnologists. Texas Civil Evidence Rules 703 and 705 allow an expert to give his opinion and to testify to the facts or data underlying that opinion. "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Tex.R.Civ.Evid. 703. "The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data." Tex.R.Civ.Evid. 705. *Trailways, Inc. v. Mendoza*, 745 S.W.2d 63, 66 (Tex.App.—San Antonio 1987, no writ); *Liptak v. Pensabene*, 736 S.W.2d 953, 957 (Tex.App.—Tyler 1987, no writ). Our reading of the record indicates that contrary to appellants' assertion, the ten-slide screening was *not* the sole basis of Dr. Leonard's opinion that Nightingale acted within the applicable standard of care. Additionally, there was testimony from sources other than Dr. Leonard that this type of cancer was difficult to detect in Pap smears. Some of that testimony came from the appellants' own expert, Dr. Johnston. The jury found cytotechnologist Nightingale was not negligent, and that even though the hospital and Dr. Burgess were negligent, such negligence did not proximately cause the "occurrence in question." Based on the record before us, we hold that the whole case did not turn on Dr. Leonard's testimony that Nightingale operated within the appropriate standard of care. Any error by the trial court in admitting the hearsay testimony was not such a denial of appellants' rights as was calculated to cause the rendition of an improper judg-

ment. TEX.R.APP.P. 81(b)(1). Point of error two is overruled.

 In point of error one, appellants contend the trial court erred in refusing to submit their requested jury questions on the issue of "loss of chance of survival." Appellants contend that the failure of appellee and its employees to detect the cancer cells on the slide delayed treatment of Jennie's cancer, "increased the risk of harm to Jennie Roland Kramer, and [they] are thereby liable to the Plaintiffs herein under the doctrine of loss of chance."

This court recently issued an opinion holding that no Texas court has clearly held that the loss of chance doctrine is recognized in Texas, and that the institution of such a new cause of action is better left to the legislature or our state's supreme court. *Crawford et al. v. Deets et al.*, 828 S.W.2d 795, 797 (Tex.App.—Fort Worth, 1992, n.w.h.). The Houston 14th District Court of Appeals has taken a similar position, declining to create a new cause of action. *Karl v. The Oaks Minor Emergency Clinic*, 826 S.W.2d 791 (Tex. App.—Houston [14th Dist.], 1992, n.w.h.). The Houston court pointed out that the cases relied upon by their plaintiffs, which are the same ones cited by our appellants, only mention the lost chance claim in dicta, and the issue was not actually raised in those cases. *Karl*, at 792. *See Duncan v. Carney*, 784 S.W.2d 488 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Valdez v. Lyman–Roberts Hosp., Inc.*, 638 S.W.2d 111 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); and *Bellaire General Hospital v. Campbell*, 510 S.W.2d 94 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

Additionally, we note that the trend in the United States toward recognizing the "loss of chance of survival" claim for damages is generally recognized to have begun with language in *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir.1966). The court which wrote *Hicks*, the Federal Fourth Circuit, has recently expressly *rejected* the lost chance theory and repudiated claims based on the dicta expressed in *Hicks*. *Hurley v. United States*, 923 F.2d 1091,

1093–95, and 1099 (4th Cir.1991). Point of error one is overruled.

The judgment of the trial court is affirmed.