**In the Matter of the MARRIAGE OF Roger Chaney THURMOND and Edith S. Thurmond and in the Interest of Roger Chaney Thurmond II, A Minor Child.**

**No. 07–93–0311–CV.**

Court of Appeals of Texas, Amarillo.

Nov. 29, 1994.

Rehearing Overruled Dec. 29, 1994.

**272**

Fred M. Sullivan, Richardson, for appellant.

Stephen W. Shoultz, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In six points of asserted error, appellant Roger Chaney Thurmond challenges the portion of the trial court judgment making a property division and setting child support. For the reasons stated herein, we sever that portion of the judgment and reverse it. The remainder of the judgment, being unchallenged by appellant, is affirmed.

The parties were married in Arkansas in 1969. Subsequent to their marriage, appellant formed two corporations in Arkansas and one in Texas. One of the two Arkansas corporations, Universal Properties, managed several rental properties owned by other entities. The second, Thurmond Development Corporation (TDC), developed and sold air purification systems. Some time before 1990, substantial judgments were taken against TDC rendering it essentially insolvent.

In late 1989, the parties moved to Texas and purchased a home in the City of Plano for $198,809. Of that amount, $53,809, or 27.07 percent of the purchase price, came from a testamentary trust created by appellant's father and, thus, constituted appellant's separate property. The remaining 72.93 percent of the cost was paid by incurring community debt. Payments on this community debt have been paid exclusively out of the separate property income of the trust. Soon after moving to Texas, appellant also formed a third corporation, Thurmond Air Quality Systems (TAQS).

On April 16, 1991, a little over a year after the parties moved to Texas, appellee filed a petition for divorce in which she sought, *inter alia*, a division of community property, sole managing conservatorship of the parties' minor child, and an award of child support.

In its judgment, the trial court awarded exclusive possession of the parties' residence to appellee until the emancipation of the minor child. At such time, the house was to be sold and the proceeds of the sale divided forty percent to appellant and sixty percent to appellee. In its findings of fact and conclusions of law, the trial court stated that appellant failed to prove, by clear and convincing evidence, any "separate property reimbursement" due on the residence or any separate property interest in the house.

 In his first point, appellant contends that the trial court erred in finding that he had no separate property interest in the parties' home. When both separate and community resources are used to acquire property during marriage, Texas courts have fairly consistently referred to the relationship between the separate estates and community estates as "a type of tenancy in com-

mon." *See Gleich v. Bongio,* 128 Tex. 606, 99 S.W.2d 881, 883–84 (1937); *Cook v. Cook,* 679 S.W.2d 581, 583 (Tex.App.—San Antonio 1984, no writ); *Carter v. Grabeel,* 341 S.W.2d 458, 462 (Tex.Civ.App.—Amarillo 1960, no writ). However, because a tenancy in common is not an estate in property but, rather, a description of the relationship between estates, 16 Tex.Jur.3d *Cotenancy and Joint Ownership* § 9 (1981), the cases have failed to clearly articulate the property interests of each of the estates.

■ Our courts have variously referred to the rights of a spouse's separate estate in this situation as "pro tanto ownership," *Broussard v. Tian,* 156 Tex. 371, 295 S.W.2d 405, 406 (1956); "a part interest," *Gleich,* 99 S.W.2d at 883; "equitable title," *Goddard v. Reagan,* 28 S.W. 352, 353 (Tex.Civ.App.—San Antonio 1894, no writ); "separate interest," *Cook,* 679 S.W.2d at 583; and "constructive trust," *Maxie v. Maxie,* 635 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1982, no writ). We believe the most viable characterization of the interest of a spouse's separate estate is that of "equitable title."

In addition to *Goddard,* several decisions have applied the principles of resulting trusts and equitable title in resolving these issues. *See Cohrs v. Scott,* 161 Tex. 111, 338 S.W.2d 127, 130 (1960); *Blum v. Rogers,* 71 Tex. 668, 9 S.W. 595, 597 (1888); *Parker v. Coop,* 60 Tex. 111, 116 (1883); *Ford v. Simpson,* 568 S.W.2d 468, 470 (Tex.Civ.App.—Waco 1978, no writ); *Robbins v. Robbins,* 519 S.W.2d 507, 509 (Tex.Civ.App.—Fort Worth 1975, no writ); *Penman v. Blount,* 264 S.W. 169, 170 (Tex.Civ.App.—Beaumont 1924, no writ). These cases provide a single analysis for characterizing property not only at the dissolution of marriage, but also in resolving the claims of third party creditors.

■ Equitable title is a property right greater than a right of reimbursement. It has been held that equitable title is a sufficient interest to permit execution by a creditor. *See,* 34 Tex.Jur.3d *Enforcement of Judgments* § 29 (1984). As a property right, it may not be divested from a spouse at

divorce without violating our state constitution. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977).

■ It is a well established rule that when a spouse uses separate property to acquire property during marriage and takes title to that property in the names of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one half of the separate funds to the other spouse.[1] *Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975); *Graham v. Graham,* 836 S.W.2d 308, 310 (Tex.App.—Texarkana 1992, no writ). This rule is consistent with the principles of trust law concerning purchase money resulting trusts. *See* George T. Bogert, *Trusts* § 74, at 271 (6th ed. 1987). The presumption, however, can be rebutted by evidence of the absence of an intent to make a gift. *See Cockerham,* 527 S.W.2d at 168. That is, there is no requirement that an affirmative intent not to make a gift be shown.

■ In addition to, and apart from, the ownership interest that is acquired by a separate estate which pays part of the purchase price of property acquired during marriage, payments made out of a separate estate for the benefit of the community estate, including the reduction of community debt, give rise to a claim for reimbursement. *Penick v. Penick,* 783 S.W.2d 194, 196 (Tex.1988); *Burton v. Bell,* 380 S.W.2d 561, 565 (Tex.1964); *Graham,* 836 S.W.2d at 310. However, as appellant's point of error only challenges the trial court's failure to find a separate property interest in the parties' home and does not raise the issue of reimbursement, we need not consider that issue.

Both appellant and the co-trustee of his father's testamentary trust testified that $53,809 from the separate property trust was used to pay part of the purchase price on the parties' home. This evidence was uncontradicted. Based on the uncontested testimony that the purchase price of the house was $198,809, appellant's separate property interest would be 27.07 percent (or 13.53 percent

---

1. The gift is presumed to be to the other spouse rather than the community estate because it is not possible for a spouse to make a gift to the community estate. *Tittle v. Tittle,* 148 Tex. 102, 220 S.W.2d 637, 642 (1949); *Celso v. Celso,* 864 S.W.2d 652, 655 (Tex.App.—Tyler 1993, no writ).

to each party's separate estate if the presumed gift of one half to appellee was not rebutted).

Before addressing appellee's other challenges to this point, we will address her single cross-point challenging the trial court's admission of the co-trustee's testimony. Appellee argues that the co-trustee's testimony should have been excluded under Rule 215(5) of the Texas Rules of Civil Procedure due to appellant's failure to supplement his answer to her discovery request concerning the identity of persons having knowledge of facts relevant to the case until some thirteen days before trial. In response, appellant argues that the record reveals that good cause existed to justify the admission of the testimony.

■ The record does support appellant's claim that the question of his separate property interest in the house was not at issue until shortly before trial. Appellee's argument at trial that appellant had "always had claims of separate property in his response" is not supported by the record. Appellant's original answer was a general denial. In his cross-action filed June 17, 1991, he made no mention of separate property. In his first amended original answer, appellant sought only reimbursement for separate property payments made on the house. It was not until appellant's second amended original answer, filed April 16, 1992, that he raised his separate property claim.

As required by Rule 215(5), the record supports a finding of good cause. Also relevant to the trial court's decision to allow the co-trustee's testimony is the fact that such testimony was merely cumulative of appellant's testimony. Appellant's effort to supplement his responses after discovering that the co-trustee's testimony would be relevant was also a factor. The absence of a verification on the supplementation was not signifi-

cant. *Jones v. Kinder,* 807 S.W.2d 868, 872 (Tex.App.—Amarillo 1991, no writ).[2]

Appellee's other responses to this first point are that (1) appellant failed to overcome the presumption of community property, (2) the trial court did not abuse its discretion "in making a division of the parties' property," (3) a claim for reimbursement is an equitable one within the discretion of the trial court, and (4) the evidence of the trust balance contradicts the dispersement of $53,-809 for the house. Each of these contentions must be dismissed.

By her first contention, appellee argues that appellant's evidence of a separate property interest in the home was insufficient to overcome the presumption of community property created by section 5.02 of the Texas Family Code. This section provides that a party seeking to overcome the community property presumption must do so by clear and convincing evidence. Each of the cases cited by appellee were decided before the 1987 amendment to section 5.02 which set out the clear and convincing evidence standard. Tex.Fam.Code Ann. § 5.02 historical and statutory notes (Vernon 1993) [Act of Aug. 3, 1987, 70th Leg., 2nd C.S., ch. 50, § 5, 1987 Tex.Gen.Laws 161].

■ More recent cases have held that this burden may be discharged by tracing and clearly identifying the property claimed to be separate property. *Welder v. Welder,* 794 S.W.2d 420, 424 (Tex.App.—Corpus Christi 1990, no writ); *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 664 (Tex.App.—San Antonio 1990, no writ). This is precisely what appellant did. He traced $53,809 of the purchase price for the house to his separate estate. This is all that is required to satisfy the standard set out in Section 5.02. Once this was done, the statutory presumption ceased to exist. *Welder,* 794 S.W.2d at 425.

2. Appellee places reliance on *Varner v. Howe,* 860 S.W.2d 458, 462 (Tex.App.—El Paso 1993, no writ), which criticizes *Jones.* Although *Jones* has been relied on by five other Texas courts, *Weaver v. U.S. Testing,* 854 S.W.2d 145, 147 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Soefje v. Stewart,* 847 S.W.2d 311, 314 (Tex. App.—San Antonio 1992, writ denied); *Kramer v. Lewisville Memorial Hospital,* 831 S.W.2d 46, 48

(Tex.App.—Fort Worth 1992), *aff'd,* 858 S.W.2d 397 (Tex.1993); *Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 756 (Tex.App.—Texarkana 1992, writ denied); *State v. Munday Enterprises,* 824 S.W.2d 643, 652 (Tex.App.—Austin 1992, no writ), only the El Paso court has relied on its own opinion in *Varner.* *See Ramirez v. Ramirez,* 873 S.W.2d 735 (Tex.App.—El Paso 1994, n.w.h.).

■ As evidence to support her position that the home was entirely community property, appellee points to the fact that the title to the house was taken in both of their names. As appellant could not give a gift to the community, *see Tittle*, 220 S.W.2d at 642, the taking of title in both of their names does not change the result of his tracing. It only creates a presumption of a gift of one half of appellant's separate property. *Cockerham*, 527 S.W.2d at 168.

■ Appellee's second argument, that "the trial court is given wide discretion in making a division of the parties['] property," reveals a misunderstanding of the trial court's authority under section 3.63 of the Texas Family Code. Section 3.63 only authorizes the trial court to make a division of the "estate of the parties," which is limited to the community property. *Eggemeyer*, 554 S.W.2d at 139. That section does not authorize any division regarding the parties' separate property. *Id.*

Appellee's discussion of the equitable nature of a right of reimbursement is also misplaced. As noted above, appellant's complaint is that the trial court erred in failing to find that he possessed a separate property interest in the home, not that the court erred in failing to grant a right of reimbursement.

Appellee's fourth contention is that appellant's tracing evidence is contradictory. She points out that the trust's initial res was $605,040 and that at the time of trial, after a dispersement of $53,809 to appellant for the down payment on the house, the co-trustee testified the balance was $585,000. Appellee contends that this is an unexplained contradiction; however, she has apparently overlooked the testimony of the co-trustee that the trust earned between $40,000 and $44,000 in interest annually. According to the co-trustee's testimony, the payment for the

house came partly from the trust's income and partly from the corpus of the trust.

■ As appellant clearly traced the origin of the $53,809 paid toward the purchase price of the parties' home to his separate property, the trial court erred in finding that he did not have a separate property interest in the home. As a result of this mischaracterization, appellant was impermissibly divested of his separate property. Appellee, however, also contends that any error in the characterization of the house would not change the judgment. We disagree.

Even assuming that appellant did not overcome the presumption of a gift to appellee of one half of his separate property payment,[3] and using the minimum estimated value of the house at the time of trial of $406,000 in our calculation, appellant's interest in the house would increase by $5,576.[4] We must decline appellee's offer to speculate on what the property division *could* have been if the trial court had not erred. Accordingly, we must sustain appellant's first point.

In his second point, appellant challenges that part of the trial court's order awarding appellee possession of the parties' home without requiring appellee to make any type of payment in exchange therefor. Other than the issue of appellant's separate property interest in the home, the subject of our discussion under his first point,[5] appellant has cited no authority in support of his argument.

■ Appellant has not challenged the trial court's finding that it was in the child's best interest to remain in the parties' house. This finding is supported by evidence that the child medically benefits from the special air filtration system installed in the house. We also note that the trial court limited appellee's right to exclusive possession of the

---

3. Due to its determination that appellant did not have a separate property interest in the house, the trial court did not make a finding on the question of whether a gift was made. However, appellant's testimony that he desired the court to allow the down payment to "remain [his] separate property" is evidence that no gift was intended.

4. If appellant had overcome the presumption, his separate property interest in the house would have increased by $33,453.

5. Appellant correctly notes that the trial court could set aside his separate property to be administered for the support of the child. Tex. Fam.Code Ann. § 14.05(a) (Vernon 1986 & Supp.1994); *Eggemeyer*, 554 S.W.2d at 139.

house until the child "is emancipated and graduates from highschool (sic)." [6]

■ Appellant also challenges the trial court's failure to require appellee to reimburse him for any part of the mortgage payments and maintenance costs he was ordered to pay. He argues that it is inequitable to require one cotenant to pay all the costs of the property without reimbursement. Parenthetically, we note that appellant is not a cotenant as he has no current right to possession of the property. *Laster v. First Huntsville Prop.*, 826 S.W.2d 125, 129 (Tex. 1991). His interest has been characterized as, essentially, an executory interest or vested remainder. *Id.*

■ As discussed further under appellant's third point, the provisions of the trial court's order requiring appellant to maintain the house and make mortgage payments for the support of the child are within the trial court's authority. As appellee was named managing conservator, the benefits she derives from residence in the house are only incidental to her position as managing conservator. Appellant has failed to cite any authority supporting his position that this type of incidental benefit gives rise to reversible error. Appellant's second point is overruled.

In his third point, appellant alleges that the trial court erred in setting the amount of child support and presents several theories in support of that contention. He alleges that (1) the trial court's finding that the needs of the child are in excess of $2,500 per month is against the great weight and preponderance of the evidence, (2) the child support order failed to set a sum certain, (3) the trial court erred in finding that appellant's net resources are greater than $10,000 per month, (4) the trial court erred in considering the lifestyle of the child in setting the amount of support, (5) the trial court failed to consider appellee's ability to provide support and erred in finding that appellant had a superior educational background, and (6) the support

ordered by the trial court results in support for both appellee and the child.

■ The only evidence concerning the needs of the child is appellee's testimony that the monthly household expenses, including the mortgage payment, was $4,067. This amount included all the expenses of appellee and the minor child, as well as some expenses of the parties' adult daughter who also lived in the house. With the exception of two items, school expenses and counseling, there was no evidence of exactly what portions of that amount were attributable to the support of the minor child. Consequently, there was nothing upon which the trial court could have based its finding that the needs of the child exceed $2,500 per month. However, as the trial court only ordered support in the amount of $1,896 per month, in view of the totality of the evidence, we cannot find that this particular erroneous finding was an error of such dimension as to cause the rendition of an improper judgment. Tex. R.App.P. 81(b)(1).

■ The second theory advanced under appellant's third point is that the trial court's order is not sufficiently definite in that it fails to set a sum certain. Appellant's primary complaint concerns that portion of the order requiring him to pay, as child support, "all reasonable repairs and maintenance on the house." He argues that the omission of any dollar limit on such expenses renders the judgment vague, indefinite and unenforceable. Even though the matters discussed above require a reversal and remand, we will discuss this contention as the question will likely arise again.

In support of his argument, appellant cites *Euston v. Euston*, 759 S.W.2d 788 (Tex. App—El Paso 1988, no writ). In *Euston*, the El Paso Court of Appeals reversed a judgment ordering a former spouse to pay 20 percent of his net resources and, in doing so, noted the order failed to set any minimum or maximum dollar amount. *Id.* at 790. That

---

6. This provision, contained in schedules 1 and 2 listing property awarded to appellee and appellant respectively, is not consistent with the provisions concerning termination of support obligations in the order itself. Because the use of

the conjunction "and" could be read to give appellee an exclusive right of possession in perpetuity if the child never graduated from high school, the text of the order itself must control.

court cited no authority for its holding that a specific amount must be set. It did, however, cite authority for the proposition that changes in support must be based on evidence of the child's needs or a change in circumstances of the obligor or obligee. *Id.* at 789.

The issue before us is slightly different. What has been assigned by the subject provision is not a fixed obligation, rather, it is a risk. To adopt appellant's position, all unquantifiable risks must be borne by the obligee parent. We do not believe that to be a necessary or appropriate result.

Only recently, and after the trial in this case, has the legislature dealt with the allocation of risk in child support orders. As of September 1, 1993, section 14.053(d) of the Texas Family Code provides that "[a]s additional child support the court shall allocate between the parties, according to the parties' circumstances, the reasonable and necessary health care expenses of a child that are not reimbursed by health insurance." Tex.Fam. Code Ann. § 14.053(d) (Vernon Supp.1994). While this change is not directly applicable here, it is an indication that the legislature considers the allocation of risk an appropriate subject of the trial court's support order even without the setting of a definite dollar limit. We conclude that as long as there are other definite factors, such as "reasonable repairs and maintenance" by which a noncustodial parent's liability may be measured, the failure to set a definite dollar limit does not, per se, require reversal. We decline to follow *Euston* to the degree that would prohibit the allocation of unquantifiable risks of this nature.

■ The trial court assigned to appellant 100 percent of the risk associated with both the repairs and maintenance of the house. Because of the inability to determine, in advance, the need for repairs or the cost of repairs, any allocation of the obligation to pay for repairs will necessarily be somewhat indefinite. Even though it may sometimes be necessary and permissible to include support provisions which do not set dollar limits, such instances do not permit the imposition of vague and indefinite obligations or obligations left to the unbridled discretion of the

other party. If there is no dollar limit set there must be some objective standard by which the obligation may be measured. That requirement is filled in this instance by the provision that the repairs and maintenance must be "reasonable." It is also true that the allocation of all of the risk to one of the parties should be subject to close scrutiny. Under the record before us, after such close scrutiny, we cannot say that allocating all of the risk of repairs to appellant was an abuse of discretion.

Appellant also points to alleged inconsistencies between various provisions of the trial court's order concerning how and when support payments are to be made. For example, one provision orders appellant to direct the co-trustee to make payments directly to the mortgage company and to repairmen while another provision directs that "all payments by [appellant] shall be made through the Collin County Child Support Office." Unlike other alleged inconsistencies in the trial court's judgment, no rational reading of the judgment can resolve this conflict.

■ In support of his contention that the trial court erred in setting the amount of child support, appellant urges as his third theory that the trial court erred in finding that the net resources available to him were greater than $10,000 per month. As appellant does not challenge the trial court's separate finding that his net resources were greater than $4,000 per month, we need not address his specific contentions.

The support guidelines in effect at the time of the trial of this cause specifically applied to obligor's resources up to $4,000 per month. *See* Tex.Fam.Code Ann. § 14.055(a), (b) (Vernon Supp.1992). Where the obligor's net resources exceeded $4,000 per month, section 14.055(c) provided that the percentages provided in subsection (b) would only be applied to the first $4,000 and "[w]ithout further reference to the percentage recommended by these guidelines, the court [could] order additional amounts of child support as proven, depending on the needs of the child at the time of the order." Tex.Fam.Code Ann. § 14.055(c) (Vernon Supp.1992). Under this version of subsection (c), the trial court could

not consider the amount of resources above the obligor's first $4,000 per month in determining additional support.[7] Therefore, any mistake made by the trial court in determining the exact amount of appellant's resources above $4,000 per month was not reversible error. Appellant's third theory is overruled.

■ Appellant's fourth theory supporting error in the trial court's setting of child support is that the trial court erred in considering the prior lifestyle of the child. We agree. Until 1989, the supreme court's child support guidelines included consideration of the family's lifestyle and income in setting child support. Supreme Court of Texas, *Child Support Guidelines*, Rule 5 (Feb. 4, 1987) (repealed 1989). However, the 1989 codification of section 14.055(c) omitted both lifestyle and income as factors to be considered, leaving the needs of the child as the only consideration. Act of June 14, 1989, 71st Leg., R.S., ch. 617, 1989 Tex.Gen.Laws 2039. The significance of this omission was noted in *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n. 3 (Tex.1993). It was error for the trial court to consider the lifestyle of the child in setting the amount of support.

Appellee contends that appellant's reliance on *Rodriguez* is misplaced because that decision "was quickly legislatively overruled by the legislature when [section] 14.055(c) was amended effective September 1, 1993." There are several reasons why we disagree with this contention. First, the trial in this cause was in April of 1992, more than a year before the 1993 amendment of section 14.055(c) became effective. The final decree of divorce was signed June 30, 1992. The fact that the supreme court did not have occasion to note the effect of the 1989 amendment until 1993 does not alter the effect of that amendment.

Secondly, even if the 1993 amendment to section 14.055(c) were applicable to this case, it did not change the effect of the 1989 amendment removing lifestyle from the fac-

tors to be considered.[8] A careful reading will reveal that the 1993 amendment to section 14.055(c) only overruled *Rodriguez* to the extent that the decision permitted a court to order support greater than the "proven needs" of the child.

■ Appellant's fifth theory under point three is that the trial court failed to consider appellee's ability to provide support and erred in finding that appellant had a superior educational background. The evidence showed that appellee had a bachelor's degree in education and had worked as a teacher in Arkansas. According to appellant's brief, there was no evidence of appellant's education and, because appellee has not challenged this statement, we accept it as correct. Tex.R.App.P. 74(f). Without any evidence of appellant's educational background, the trial court could not properly make a finding on the relative quality of the parties' educations. However, we do not believe that this finding affected the trial court's decision as to appellee's ability to provide support.

The record reveals that the trial court did consider appellee's ability to provide support as required by section 14.054(1) of the Texas Family Code. The trial court found that appellee's net resources were zero. Although appellee's education and prior work experience show significant earning potential, there was no evidence that she was "intentionally unemployed or underemployed" at the time of trial. Appellee had not worked for over ten years and was not certified to teach in Texas. She testified that several months of additional education would be required before she would be able to teach in Texas.[9] However, because we must reverse and remand for a new trial on property division and support, the intervening period between the first trial and the retrial must be taken into consideration in determining appellee's net resources at the time of retrial.

---

7. The 1993 amendment to section 14.055(c) allowing consideration of the income of the parties in setting additional support above the guidelines is inapplicable to the instant case. Tex.Fam. Code Ann. § 14.055(c) (Vernon Supp.1994).

8. As noted above, however, the 1993 amendment did replace income of the parties as a consideration.

9. We do not mean to imply that appellee's earning potential is limited to the field of education.

■ The sixth and final theory offered in support of appellant's third point of error is that ordering the payment of child support by making the mortgage payments on the house resulted in court-ordered alimony. We do not agree. Considering the relative positions of the parties at the time of divorce, including appellee's inability to pay the mortgage, the trial court was faced with the problem of setting a proper amount of child support and giving effect to its finding that the child should reside in that particular house. Under these circumstances, we cannot say that the trial court's resolution of the problem was an abuse of discretion.

Although the total amount of the monthly support payment of $1,896 is greater than appellant's calculation of the value of the needs of the child, it must be remembered that, unlike a conventional child support payment, under the original property division, he would recover 40 percent of that portion of the house payment that went to equity and 40 percent of increases in the value of the property. We hold that under these circumstances, the form of the support payment does not result in alimony.

To summarize our disposition of appellant's third point, it is sustained on the second and fourth theories, and in part, on his fifth theory.

In his fourth point, appellant urges that the trial court erred in finding that he fraudulently transferred community assets. Consideration of this point requires a further explication of two of the corporations in which the parties were involved. While living in Arkansas, the parties formed a corporation called Thurmond Development Corporation (TDC). Both separate and community assets totalling up to $800,000 were invested in the corporation, whose primary business was the development of air purification sys-

tems. Appellant held all of the issued stock in TDC.

At some point before 1990, for reasons not revealed in the record, judgments totalling nearly one million dollars had been rendered against both TDC and the parties. In late 1989 or 1990, a second corporation, Thurmond Air Quality Systems (TAQS), was formed in Texas. All of the stock in TAQS was issued to third party investors. The parties had no ownership interest in TAQS.

After the formation of TAQS, appellant transferred "assets" of TDC to TAQS. The record is unclear as to exactly what was transferred. Appellant testified that TAQS was given the customer lists from TDC. From the testimony that TAQS is "selling the same thing" as TDC, we infer that appellee was alleging that trade secrets had been transferred.

Appellee also made an effort to show that some of TDC's accounts receivable had been transferred to TAQS. Appellant denied this allegation and the exhibits support his testimony. Appellant testified that TAQS had assumed some of TDC's accounts payable. This testimony appears to be supported by an exhibit entitled Aging Report (Accounts payable).[10]

Appellant challenges the finding of the trial court that, based on this evidence, appellant had transferred community assets from TDC to TAQS with the intent of depriving appellee of the use and enjoyment of those assets. Appellant argues that any assets transferred from TDC to TAQS were corporate assets and not community property. On the other hand, appellee contends that TDC was community property[11] subject to division at divorce.

■ Corporations are not property, rather, they are separate legal entities. 15 Tex.Jur.3d *Corporations* § 10 (1981). Share-

10. The report supports the testimony in that several items listed on the report are dated 1989, before TAQS was formed.

11. Appellee supports this claim by reference to the trial court's conclusion of law number nine. Conclusion of law number nine actually states that "the *stock* in Thurmond Development Corporation is community property." (emphasis added). Even this statement is not entirely cor-

rect. As Arkansas is not a community property state, the stock was not "community property" as defined under Texas law. However, as it would have been community property if acquired in Texas, it is considered quasi-community property and is dealt with as though it were community property. Tex.Fam.Code Ann. § 3.63(b) (Vernon 1993).

holders have no direct ownership in the assets of the corporation. *Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 331 (5th Cir.1984), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Raulston v. Everett,* 561 S.W.2d 635, 638 (Tex.Civ.App.—Texarkana 1978, no writ); 15 Tex.Jur.3d *Corporations* § 147 (1981). Because TDC is an Arkansas corporation, we note that Arkansas also follows this rule. *Arkansas Iron and Metal v. First Nat. Bank,* 16 Ark.App. 245, 701 S.W.2d 380, 384 (1985).

■■■■■ When the injury alleged is to the corporation, only the corporation may seek recovery therefor. *Wingate v. Hajdik,* 795 S.W.2d 717, 720 (Tex.1990); *Kenneth H. Hughes Interests v. Westrup,* 879 S.W.2d 229, 235 (Tex.App.—Houston [1st Dist.] 1994, no writ). *See also Walker v. Hyde,* 303 Ark. 615, 798 S.W.2d 435, 437 (1990). As the assets alleged to have been fraudulently transferred were corporate assets, the only remedy available to a shareholder would be a derivative action. *Eye Site, Inc. v. Blackburn,* 796 S.W.2d 160, 161 (Tex.1990). *See also Walker,* 798 S.W.2d at 437. Although a shareholder may recover individually for personal causes of action, the facts of this case, just as those present in *Wingate,* show the claim belongs to the corporation. *Wingate,* 795 S.W.2d at 720.

The transfers at issue, if wrongful, would only give rise to a cause of action brought by TDC against appellant. Even assuming that appellee could have brought a derivative action without being the stockholder of record, her action was not in the nature of a derivative suit. Appellee also failed to present evidence that TDC was not a true corporation but merely the alter ego of appellant. Therefore, we hold that the trial court erred in awarding appellee a personal judgment against appellant based on the transfers of corporate property belonging to TDC. The trial court's authority to make a division of the parties' community property is limited to a division of the stocks of TDC. The fact that these stocks appear to have no value does not alter the trial court's authority. Appellant's forth point is sustained.

■■■■ In his fifth point, appellant challenges the trial court's award of $100,000 to appellee for her community interest in Universal Properties. Appellant argues that there was insufficient evidence to support the finding that the stock in Universal Properties had a value of $200,000. Universal Properties was also an Arkansas corporation formed during the parties' marriage. It managed several rental properties owned by other entities. The income from this activity was approximately $36,000 per year. The evidence indicated that, other than the management contracts, Universal Properties had no assets.

Other than appellant's testimony concerning the income of Universal Properties, the only other evidence concerning the corporation was a reference on a September 30, 1989 joint balance sheet of the parties. Under the assets column of that document, the parties listed "Universal Properties, Inc. (note to SH) 200,000.00." This document lists the personal assets and liabilities of the parties, not the corporation. Appellant's contention that this item indicates a debt owed by Universal Properties to the parties as shareholders is the only reading that is consistent with the rest of the document and the other testimony. Consequently, there was insufficient evidence to support a finding on the value of the Universal Properties stock and the trial court was limited to making a division of the stock in the corporation and the corporation's note held by the parties. We must, therefore, sustain appellant's fifth point.

■■■■ In his sixth point, appellant challenges the trial court's finding that he violated the court's temporary order and the resulting award to appellee of $10,500 for the claimed violation. On May 28, 1991, the trial court rendered temporary orders. These orders included provisions restricting the parties' ability to use community assets. Two of the provisions relevant here enjoined the parties from:

> Making withdrawals from any checking or savings account in any and all financial institutions for any purpose except as for legal expenses or for usual and normal living or business expenses.

> Spending any sum of cash in Petitioner's or Respondent's possession or subject to

Petitioner's or Respondent's control for any purpose, except for legal expenses or for usual and normal living or business expenses.

The transaction the trial court found violative of its temporary orders involved a payment from Universal Properties to appellant, made at appellant's direction as the corporation's president, as an advance on his salary. Appellant initially contends that the trial court's orders do not apply to this transaction because the orders were not directed at Universal Properties or appellant in his capacity as a corporate officer. We disagree. The quoted provisions not only encompassed the spending of community funds but also any funds under appellant's control. It is also clear that the advance of salary was not a usual expense of the corporation.

■ Appellant also complains of the judgment awarding appellee $10,500 based on this transaction. Appellant challenges the sufficiency of the evidence supporting the finding that $10,500 would fairly and reasonably compensate appellee for appellant's violation of the trial court's orders. He argues that there was no evidence that this advance on salary caused any diminution in the value of the quasi-community property stock in Universal Properties. Appellee's response in support of the finding only makes reference to evidence of the transaction. It does not show that any evidence of damages was introduced. Both the decree and findings of fact indicate that the $10,500 judgment in favor of appellee was awarded as damages and was not intended as a sanction against appellant for his violation of the court's orders. Without any evidence that this payment resulted in injury to appellee's interest, it was error for the trial court to make such an award. Appellant's sixth point is sustained.

Consistent with our disposition of appellant's points of error, the portion of the trial court's judgment concerning division of the parties' property and child support are severed from the rest of the judgment. As severed, that portion of the judgment of the trial court is reversed and remanded to the trial court. After the severance, the remainder of the trial court's judgment is affirmed.