Elmendorf v. Elmendorf 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00326-CV







Steven Howard Elmendorf, Appellant



v.



Pamela Jane Matula Elmendorf, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 93-231-F277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING







 Steven Howard Elmendorf, appellant, and Pamela Jane Matula Elmendorf,
appellee, were granted a divorce following a nonjury trial. Steven appeals from the final divorce
decree providing for the division of the marital estate. In ten points of error, Steven contends the
trial court: (1) abused its discretion in dividing the community estate; (2) erred in characterizing
certain assets as community property; and (3) made erroneous findings of fact. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 Steven and Pamela married in 1974. Throughout their marriage, Steven was
employed by Gilbert X-Ray. He is currently a district manager with an average monthly salary
of $13,556. Pamela ceased working outside the home shortly after the marriage, but attended
college part-time. The couple had two children, ages 14 and 16 at the time of trial, the older
suffering from a long history of significant psychological and physical problems. In 1986, Steven
and Pamela built a home where the family lived. After nineteen years of marriage, Steven became
involved with another woman, moved out of the family home, and sued for divorce.

 The divorce suit was tried to the court on October 27, 1993. At trial, Steven
admitted his adultery. With regard to the children, the parties agreed to be joint managing
conservators, with Pamela having primary possession. Steven received standard visitation
privileges. Although the court found that the proven needs of the children exceeded $4,000 per
month, it ordered Steven to make child support payments of $1,700. 

 At trial, the parties contested two main issues: (1) the division of the marital estate,
and (2) the characterization of 161 shares of Gilbert X-Ray stock as community or separate
property. The chief dispute concerning division of the estate was the treatment of the family
home. It was undisputed that the home was a negative asset in the amount of $12,000, carrying
a large monthly mortgage payment of nearly $2,500. Aside from this economic factor, there was
expert testimony that it was in the best interest of the children to remain in the family home for
a period of time after the divorce. This was especially true for the elder son, who had been
suffering major problems, including recent hospitalization triggered by the couple's separation. 
In its final decree, the court ordered the home set aside for the benefit of the children for three
years. Steven was ordered to make the monthly mortgage payments and was entitled to all income
tax deductions. At the end of three years, the home was to be sold with all proceeds from the sale
going to Steven.

 As for the 161 shares of Gilbert X-Ray stock, valued at $14,310, the parties clashed
as to whether it was community property or Steven's separate property. Steven contended that
the stock was a gift to him personally from the president of Gilbert X-Ray, Robert Sanford. In
contrast, Pamela testified that the stock was a Christmas present by Sanford to both of them. The
trial court found the stock was community property. However, in the final division of the assets,
the court awarded the stock to Steven. The end result of the property division revealed a total
community estate of $548,632.75, with fifty-nine percent awarded to Pamela and forty-one
percent awarded to Steven. Steven now appeals both the treatment of the marital home and the
classification of the stock.


DISCUSSION



A. Treatment of the Marital Home

 In a decree of divorce, the court shall order a division of the estate in a manner that
the court deems just and right, having due regard for the rights of each party and any children of
the marriage. Tex. Fam. Code Ann. § 3.63 (West 1993). The trial court has broad discretion
in its division of the estate and will be corrected on appeal only when an abuse of discretion is
shown. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Pruske v. Pruske, 601 S.W.2d 746,
750 (Tex. Civ. App.Austin 1980, writ dism'd). In exercising its discretion, the trial court may
consider many factors, including fault, the parties' abilities, business opportunities, earning
capacity, financial condition and obligations, award of custody, and the nature of the property. 
See Murff, 615 S.W.2d at 699; Vannerson v. Vannerson, 857 S.W.2d 659, 669 (Tex.
App.Houston [1st Dist.] 1993, writ denied).

 In the present case, the trial court's findings of fact indicate that it considered
precisely these legitimate factors in the division of the marital estate, including the treatment of
the home. The court found that: Steven had committed adultery and was at fault in the break-up
of the marriage; Steven's earning capacity was far greater than Pamela's; Pamela would have
primary possession of the children; and it was in the best interest of the children to remain in the
family home until the youngest graduated from high school. These fact findings are essentially
unchallenged. (1)

 Given this factual background, the trial court's treatment of the marital home was
not an abuse of its discretion. Critical to this equation are the needs of the children. The Family
Code specifically mandates that the division of the marital estate must consider the children's
needs. Tex. Fam. Code Ann. § 3.63 (West 1993); see Boriack v. Boriack, 541 S.W.2d 237, 243
(Tex. Civ. App.Corpus Christi 1976, writ dism'd). In this case, Pamela is the primary
possessory parent. The court found that it was in the children's best interest to remain in the
family home. Pamela, unemployed at the time of the decree, could not make the hefty mortgage
payments. Consequently, the court awarded the home to Steven with the accompanying burden
of making the mortgage payments. However, because of the needs of the children, the court set
aside the home for their benefit for three years. After that time, the home is to be sold with all
proceeds going to Steven. Given the needs of the children, this treatment of the marital home is
a legitimate exercise of the trial court's court discretion in the division of the community estate. 


 Furthermore, viewing the division of the marital estate as a whole, the treatment
of the home is not inappropriate. The trial court's inventory reflects a total community estate of
$548,632.75. The court awarded $326,274.15, or fifty-nine percent, to Pamela. The remaining
forty-one percent was awarded to Steven. In this inventory, the trial court specifically excluded
the home and treated it separately. Even if the court had included the negative $12,000 asset in
the total inventory, the division of the community estate would be approximately sixty-one percent
for Pamela and thirty-nine percent for Steven. This negligible change in the total division of the
estate does not reflect an abuse of discretion.

 The essence of Steven's complaint on appeal is not with the court's treatment of
the home, but with its alleged failure to consider in the division of the property the three-year
stream of mortgage payments he must make. Steven characterizes these payments, totalling
$90,835 over three years, as a separate "debt" that should have been figured into the total
community estate. Steven concludes that since the court did not include these payments, it abused
its discretion by making a "draconian" division of property that created an economic windfall for
Pamela at his expense. We disagree.

 The marital home was an asset of the community. Like any other asset, it had a
value at the time of the divorce. In this case, the home had an undisputed value of negative
$12,000. (2) The trial court awarded this asset to Steven following the three-year set-aside. At the
end of the set-aside, Steven retains the asset. The only consideration the trial court was required
to make at the time of division was the effect of awarding this asset and its negative value on a
just and right division of property. There was no additional requirement to add up the future
mortgage payments and consider them separately, because the debt on the property was already
considered in determining the value of the asset. While Steven is required by the decree to make
those payments, he retains the benefit of the asset following the set-aside.

 To support his argument, Steven relies primarily on Wilson v. Wilson, 225 S.W.2d
236 (Tex. Civ. App.Fort Worth 1949, no writ). The Wilson court held that "under the peculiar
facts and circumstances of the case," the treatment of a piece of real property was manifestly
unjust and unfair. Id. at 239. Those peculiar facts, however, distinguish Wilson from this case. 
The property in Wilson was a two-story house; the couple lived in an upstairs apartment while the
first floor housed the husband's chiropractic business. Id. at 238. The property had been
transformed from residential to commercial. Additionally, the house was purchased for $9,731,
but had appreciated to $50,000. Finally, the decree awarding the house to the wife made no
provision for who would pay the mortgage, taxes, and upkeep. Id. On review, the court of civil
appeals held this property division unjust because: (1) the husband was deprived of his business
offices; (2) the valuable business property had appreciated to such a level that it could be sold and
each party could be awarded a sum sufficient to buy a house well in excess of what the original
cost; and (3) the trial court's failure to state in the decree who had to make the mortgage payments
created a risk that the property could be lost to both. (3) Id. Clearly, none of these "peculiar facts"
exist in this case.

 Additionally, Steven's argument that the set-aside creates a windfall for Pamela is
unpersuasive. A comparable issue was considered recently in In re Marriage of Thurmond, 888
S.W.2d 269 (Tex. App.Amarillo 1994, writ denied). In Thurmond, the husband challenged the
trial court's order awarding the wife possession of the family home without requiring the wife to
make the mortgage payments. Id. at 275. On remarkably similar facts, the trial court awarded
this set-aside for the benefit of a child with special medical needs until he graduated from high
school. Id. at 275-76. Rejecting the husband's challenge, the court of appeals held:


[T]he trial court's order requiring [the husband] to maintain the house and make
mortgage payments for the support of the child are within the trial court's
authority. As [the wife] was named managing conservator, the benefits she derives
from residence in the house are only incidental to her position as managing
conservator.


Id. at 276. Additional authority likewise recognizes the appropriateness of this type of treatment
of the marital home. See Girard v. Girard, 521 S.W.2d 714, 719 (Tex. Civ. App.Houston [1st
Dist.] 1975, no writ) ("[T]he trial court might have awarded the homestead to the wife without
requiring that she make any payment on the note secured by a mortgage on the property . . . .");
see also Cluck v. Cluck, 647 S.W.2d 338, 343 (Tex. App.San Antonio 1982, writ dism'd) (trial
court did not abuse its discretion in failing to credit husband for house payments, taxes, and
insurance premiums paid by husband for residence). 

 Given the facts and circumstances of this divorce, the trial court's treatment of the
family home was not an abuse of its discretion. The special needs of the children, the three-year
limit on the set-aside for their benefit, and Pamela's role as possessory parent all weigh in favor
of the trial court's decision concerning the set-aside. Additionally, the overall property division
is not manifestly unjust. We overrule Steven's fourth, fifth, sixth, and seventh points of error.


B. Characterization of the Gilbert Stock

 Steven's second chief complaint concerns the trial court's characterization of 161
shares of Gilbert X-Ray stock as community property. In three points of error, he challenges the
legal and factual sufficiency of the evidence to support the trial court's finding that the shares were
part of the community estate. He contends that these shares were a gift to him individually and
thus are his separate property.

 Property possessed by either spouse during the marriage is presumed to be
community property. Tex. Fam. Code Ann. § 5.02 (West 1993). The party seeking to overcome
this presumption must do so by clear and convincing evidence. Id. Hence Steven bore the burden
at trial to show by clear and convincing evidence that the stock was his separate property and not
compensation. The trial court concluded that he did not meet this burden.

 Steven testified that he received the shares from company president Robert Sanford
in December 1989. Unlike previous years, the company did not give him any Christmas bonus
that year. Steven further testified that he believed the stock was a gift. When asked if he was
ever told by someone at Gilbert that the stock was a gift, Steven answered "yes." This answer,
however, was met with an immediate hearsay objection which the trial court sustained. (4) 
Additionally, Gilbert vice president William Henderson testified that he was given Gilbert stock
as a Christmas gift in 1989. When asked if he knew if Steven had been given a similar gift, his
answer was precluded by a sustained objection due to Henderson's lack of personal knowledge
as to whether the stock was a gift or not. (5) There was also testimony that Gilbert stock was
restricted and could only be held in the name of a Gilbert employee. Regarding the nature of the
stock, Pamela testified that she believed the stock was a Christmas bonus. 

 Given this record, the evidence does not show conclusively that Steven overcame
the community presumption by clear and convincing evidence. Both interested parties offered
self-serving testimony. Steven believed the stock was a personal gift to him alone; Pamela
believed it was compensation. The fact that the stock was required to be in Steven's name is not
compelling; indeed, it can be construed to raise an inference in Pamela's favor, since it was
undisputed that another 558 shares of Gilbert stock was community property despite being
registered in Steven's name alone. Henderson's testimony about his stock has no bearing on the
stock Steven and Pamela received. Significantly, the person who transferred the stock, company
president Sanford, probably the only person who could have given conclusive evidence as to the
true nature and intended recipients of the transfer, was not called to testify. On this evidence,
Steven has not conclusively overcome the statutory community presumption with clear and
convincing evidence. Nor do we believe the trial court's finding is so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly unjust. See Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

 Moreover, even if we assumed Steven met his burden of proof, we would find the
trial court's mischaracterization harmless in light of the fact that the stock was awarded to him. 
To require a case to be remanded for a new division of property, a trial court's error must have
materially affected a just and right division of property. Jacob v. Jacob, 687 S.W.2d 731, 732
(Tex. 1985). If a mistake is made in the characterization of property, but the division is otherwise
equitable, the error is harmless and will not be disturbed on appeal. Murff, 615 S.W.2d at 699;
Magill v. Magill, 816 S.W.2d 530, 533 (Tex. App.Houston [1st Dist.] 1991, writ denied). Mere
mischaracterization of separate property as community property alone does not require reversal. 
Id. However, the trial court cannot divest a divorcing spouse's separate property. Cameron v.
Cameron, 641 S.W.2d 210, 215 (Tex. 1982). The appellant has the burden of proof to show that
the disparity in the division of property was caused by the mischaracterization and was of such
substantial proportions that it constituted an abuse of the trial court's discretion. Id. 

 Here, these 161 shares, along with the other 558 shares of stock, were all awarded
to Steven in the property division; he was not divested of the property. The value of the 161
shares of disputed stock was only $14,310. Given the size of the estate, the reclassification of this
stock as separate property would have only a minor effect on the percentages of property
distributed to each spouse. Steven has not shown that the alleged mischaracterization materially
affected a just and right division of property and was of such substantial proportions as to
constitute an abuse of discretion. We overrule points of error one, two, and three.


C. Challenges to Fact Findings

 Steven's three remaining points of error challenge specific fact findings by the trial
court. Given our resolution of the main substantive issues of his appeal, these points of error are
meritless. In point of error eight, Steven contends there is no evidence to support the trial court's
finding that he was at fault in the breakup of the marriage "if such a finding contains an implied
finding by the court that appellant committed any act constituting a fault ground for divorce other
than adultery." It is undisputed that Steven committed adultery. The trial court so found in its
finding of fact six. In finding of fact 11A, the court found Steven was "at fault in the breakup and
committed adultery." (Emphasis added.) We do not construe this finding to mean that there are
additional reasons for Steven's fault aside from his admitted adultery. We therefore overrule this
point of error.

 Steven's two remaining points of error challenge the legal sufficiency of the
evidence to support two additional findings of fact made by the trial court. Additional finding of
fact three recounts that the value of the residence will in all probability increase during the three-year set-aside period. Both parties agree that there is no evidence in the record concerning
appreciation of the value of the residence. Additional finding of fact four states that the trial court
recently made a post-decree order for Pamela to cooperate with Steven in refinancing the home
to decrease the mortgage payments. There is obviously no evidence in the trial-record concerning
post-decree matters. 

 However, erroneous findings of fact or conclusions of law do not require that the
trial-court judgment be reversed if it is otherwise correct on the merits. Able v. Able, 725 S.W.2d
778, 780 (Tex. App.Houston [14th Dist.] 1987, writ ref'd n.r.e.); Vandever v. Goette, 678
S.W.2d 630, 635 (Tex. App.Houston [14th Dist.] 1984, writ ref'd n.r.e.). Since we conclude
that the trial court did not abuse its discretion in making a just and right division of the community
estate, the judgment is correct on the merits notwithstanding any error in the two additional fact
findings. Points of error nine and ten are overruled.


CONCLUSION


 Having overruled all points of error, the trial-court judgment is affirmed.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 16, 1995

Do Not Publish
1.   In his eighth point of error, Steven contends that there is no evidence of fault other
than his adultery. This point of error is considered infra.
2.   The fair market value of the home was $180,000; the current mortgage indebtedness
was $192,000, yielding a negative $12,000 value.
3.   The court's concern that the decree's silence on who would make the mortgage
payment created a risk of foreclosure is significant. In the present case, the trial court
specifically considered the risk of loss in its analysis. In a hearing on Steven's motion to
clarify the judgment, the trial court explained that if he awarded the house to Pamela, she
did not have the income to maintain it and the asset would be lost. By awarding the
house to Steven, requiring him to make the mortgage payments, and giving him the
income tax deductions, the court protected the asset from which Steven received both the
current tax benefits and all the benefits after the set-aside.
4.   Steven argues on appeal that we must consider his answer as probative evidence
because the hearsay objection came too late. The record reflects that immediately
following the question "[w]ere you told it was a gift," Steven said "yes." Counsel
immediately objected on hearsay grounds; the objection was sustained. Steven's belief
that the objection was untimely because the witness was able to answer before the
objection was made is incorrect. Subsequent objection is timely where the witness
answers an objectionable question too quickly for an objection to be interposed. See 1
Steven Goode, Olin G. Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of
Evidence: Civil and Criminal § 103.2, at 18 (Texas Practice 2d ed. 1993); 1 McCormick on
Evidence § 52, at 201 (John W. Strong ed., 4th ed. 1992). 
5.   Again, Steven argues we must consider Henderson's answer despite the sustained
objection. Similar to his hearsay response, the record reflects that counsel immediately
objected to Henderson's "yes" answer. As discussed above, the subsequent objection is timely
in this context.